MONTGOMERY WARD & CO., INC., APPELLANT, *v.* BARGER ET AL., D. B. A. BARGER BROS., APPELLEES.

(No. 308—Decided December 10, 1958.)

*Messrs. Shaw & Cox,* for appellant.
*Mr. W. S. Paxson,* for appellees.

CRAWFORD, J. In this appeal on questions of law plaintiff, appellant herein, seeks reversal of a judgment of the Court of Common Pleas dismissing its cause of action against defendant Wilbur Barger, and of the overruling of its motion for a new trial.

The action was brought upon an account against Wilbur Barger and Lyle Barger, doing business as Barger Brothers. Lyle Barger did not answer or appear, and judgment was entered against him by default. Wilbur Barger answered with a general denial. A jury was waived, and the case tried to the court.

At the close of plaintiff's evidence the court sustained a motion of the defendant Wilbur Barger to dismiss plaintiff's cause of action or to "direct a verdict" as to him upon plaintiff's evidence.

It appears that in October 1956, plaintiff embarked upon a project to install a heating system in its farm store in Washington Court House and awarded the contract to "Barger Brothers" who submitted the lowest bid in the sum of $1,741.26. This bid was unsigned and was typed upon stationery bearing the name "Barger Bros., 304 Sixth Street." It was also agreed that plaintiff should supply the equipment to be installed, and be paid therefor the sum of $1,073.78 when the contractor should receive plaintiff's check for the contract price of $1,741.26.

The work was done in December 1956, and, thereafter, a check in the amount of $1,741.26, the contract price, dated February 15, 1957, was mailed by plaintiff's Illinois office to Barger Brothers at 304 Sixth Street, which Wilbur testified was the Bargers' mother's address, and not his. The check was endorsed by "L. H. Barger," who was assumed to be Lyle. But the sum of $1,073.78 for the equipment was never paid to the plaintiff.

Plaintiff seeks to hold Wilbur Barger liable for the cost of the equipment in the sum of $1,073.78, under the provisions of Section 1775.15, Revised Code, which reads as follows:

"(A) When a person, by words spoken or written or by

conduct, represents himself, or consents to another representing him to any one, as a partner in an existing partnership or with one or more persons not actual partners, he is liable to any such person to whom such representation has been made, who has, on the faith of such representation, given credit to the actual or apparent partnership, and if he has made such representation or consented to its being made in a public manner he is liable to such person, whether the representation has or has not been made or communicated to such person so giving credit by or with the knowledge of the apparent partner making the representation or consenting to its being made.

"(1) When a partnership liability results, he is liable as though he were an actual member of the partnership.

"(2) When no partnership liability results, he is liable jointly with the other persons, if any, so consenting to the contract or representation as to incur liability, otherwise separately.

"(B) When a person has been thus represented to be a partner in an existing partnership, or with one or more persons not actual partners, he is an agent of the persons consenting to such representation to bind them to the same extent and in the same manner as though he were a partner in fact, with respect to persons who rely upon the representation. Where all the members of the existing partnership consent to the representation, a partnership act or obligation results; but in all other cases it is the joint act or obligation of the person acting and the persons consenting to the representation."

Plaintiff called three witnesses: Defendant Wilbur Barger, for cross-examination; George Purple, its local manager in Washington Court House; and Jack Woods, its farm store manager at that point.

Wilbur Barger testified that he and Lyle Barger were brothers but not partners; that they worked for each other from time to time and each received wages from the other for such work; that he alone owned a truck upon which appeared the name "Barger Brothers" and both their names and telephone numbers; that he never used the stationery bearing the name "Barger Bros." with their mother's address, 304 Sixth Street, upon it; that the name "Barger Brothers" was of early and

somewhat obscure family origin and had never signified a partnership between Wilbur and Lyle Barger; that such a partnership never existed; that, although they sometimes employed each other, they never shared profits or expenses on any job; that Lyle Barger alone had negotiated for this contract; that, although Wilbur had gone along to plaintiff's premises on his brother's first visit, he in nowise participated in making the arrangements; that Wilbur had been employed by Lyle to help in performing the work for plaintiff; that the plaintiff had never tried to collect the present claim from Wilbur, but had asked him the whereabouts of his brother, Lyle; that he, Wilbur, had lived in Washington Court House all his life, but that Lyle had been in and out of that community and had not been seen by Wilbur since February 1957; and that Wilbur had never been paid $500 owing him by Lyle for labor on plaintiff's job.

George Purple, plaintiff's manager in Washington Court House, was not sure whether one or the other or both of the defendants had come to discuss and bid on the proposal to do the work; and he testified that the bid was the lowest of three received, "so it was accepted" and was processed through plaintiff's central office in Illinois; that the farm store manager told him "Mr. Barger" was capable of doing the job; that Purple had had conversations with both brothers, and thought they were doing business together; that he was not sure with whom the arrangement was made to furnish the heaters for which plaintiff was to be paid upon Barger Brothers receiving the check from plaintiff; that defendants never told him they were partners; and that at some time, not specifically stated, he saw the truck.

Upon cross-examination, Purple testified that before the bid was made he did not know either of the Bargers; that he had not known them personally but had seen their truck on occasion; that the bid was sent to plaintiff's Chicago office and accepted there; that when it came to collecting plaintiff's claim, Purple asked Wilbur Barger on a couple of occasions where Lyle could be found; and that he was looking for Lyle because he was the one who had received and cashed the check from the plaintiff. Purple did not know whether Wilbur Barger was ever billed for the account, and he had never asked Wilbur for payment.

Jack Woods, plaintiff's farm store manager, testified that he did not know the defendants until they went on this job; that he first talked to them in the fall of 1956 about installing the heating system; that he talked sometimes to one and sometimes to the other; that he saw the truck; that he thinks it was Lyle who gave him the bid; that neither of the Bargers ever said that they were in business together, but that "everything seemed that way"; and that during the process of the work Lyle did most of the talking with him.

On cross-examination, Woods testified that the bid was brought to him by Lyle Barger, that he does not remember whether he saw the truck before the bid was submitted, and that what he saw on the side of the truck did not have any influence upon him.

Plaintiff's ledger sheet, which Purple testified was in the handwriting of plaintiff's credit manager, was introduced in evidence. Upon it appeared the name of "George F. Bainter," an employee of The Dayton Power & Light Company, who apparently had no connection with the transactions between the parties except perhaps to bring them together initially. The name of Bainter had been scratched out and that of "Barger Brothers" was printed above it with pen and ink. According to the evidence, the address, which had apparently never been changed, was "325 5th," which was not that of Wilbur Barger, but was not otherwise identified.

In this state of the evidence the trial court was justified in concluding that no actual partnership had been proved. There is considerable evidence to indicate that Wilbur Barger was in the category of one who "represents himself, or consents to another representing him to any one, as a partner * * * with one or more persons not actual partners * * * and * * * has made such representation or consented to its being made in a public manner."

But where the plaintiff's case fails is in not showing that it "has, on the faith of such representation, given credit to the actual or apparent partnership." It appears that plaintiff and its employees paid little, if any, attention to the identity of the person or persons with whom they were dealing, but that it and they were concerned only with obtaining someone who

could do the work required at the lowest bid. This is attested by all the attending circumstances: the vague knowledge of plaintiff's employees as to the identity of the person or persons dealt with and their apparent indifference on that subject; the apparently casual handling of the ledger sheet; plaintiff's lack of knowledge as to the identity or significance of various addresses; the extraordinary procedure of mailing the full check for the work without first or simultaneously obtaining payment for the merchandise; and the subsequent attempts to locate and collect from Lyle Barger only.

The plaintiff's evidence having failed to indicate reliance by plaintiff upon any of the representations described in the statute, or which might give rise to liability under the common law (30 Ohio Jurisprudence, 1009, Partnership, Section 28), the judgment for the defendant, Wilbur Barger, will be, and hereby is, affirmed.

*Judgment affirmed.*

HORNBECK, P. J., and WISEMAN, J., concur.