[Civ. No. 23043.   Second Dist., Div. One.   Feb. 5, 1959.]

SIDNEY WELTMAN, Respondent, v. HERMAN H. KAYE,
Appellant.

Bertram S. Harris for Appellant.

Joseph Stell and Herbert Murez for Respondent.

FOURT, J.—This is an appeal from a final judgment for $10,250 plus interest in favor of Sidney Weltman, which sum represents the amount paid by Weltman to Herman H. Kaye for a one-half partnership interest in a collection agency known and operated as Superior Collectors, and decreeing that Weltman was entitled to retain the sum of $2,154.06, which sum represents monies previously paid to Weltman for services rendered during the continuance of the partnership.

The material allegations set forth in plaintiff's complaint consisting of six causes of action, are that prior to March, 1955, Kaye was the sole proprietor of a collection agency operated as Superior Collectors; that Kaye, knowing that Weltman had no previous experience in and was wholly unfamiliar with said collection agency business, solicited Weltman to purchase a one-half partnership interest in said collection agency; that Kaye represented to Weltman that he had earned net profits of $13,200 from the operation of said collection agency in the calendar year 1954, whereas the net profits earned in said business for said year were $680.38; that Kaye represented to Weltman that the value of said business was the sum of $23,000, whereas its value was substantially worth-

less; that in reliance on the aforesaid and other representations, Weltman was induced to enter into a partnership agreement with Kaye, to purchase a one-half partnership interest in said business from Kaye for the sum of $10,250, and to pay said sum to Kaye; that Weltman first discovered that Kaye's representations and each of them were false and untrue in August of 1955, and that promptly thereafter he served a notice of rescission upon Kaye and demanded the return of $10,250 from Kaye, none of which sum has been paid to Weltman; and that at the special instance and request of Kaye, Weltman performed work and rendered services to Kaye of the reasonable value of $2,500.

Kaye's answer consisted of a denial of the allegations, and, as affirmative defenses, Kaye alleged that his books and accounts at all times during the negotiations were open for inspection by Weltman and his accountant; that Weltman had knowledge of other offers received by Kaye for the purchase of a partnership interest in said business and that Weltman's attorney prepared the written partnership agreement which Kaye signed without legal advice; that on or about May, 1955, Kaye discovered the inability of Weltman to perform his duties as required under the partnership agreement and offered to cancel the partnership agreement, to pay Weltman the sum of $10,250, and to allow Weltman to retain his drawings to date, which offer Weltman refused to accept; that Weltman was paid from the partnership bank account a draw of $2,288.95 plus personal expenses of approximately $50; and that Weltman has failed to perform his duties as required under the partnership agreement and that on August 13, 1955, Kaye gave Weltman written notice of his intention to dissolve the partnership under the terms of the partnership agreement.

The trial court heard considerable testimony and received into evidence many exhibits, including books of original entry and various documents and copies of income tax returns prepared by certified public accountants.

Appellant contends that Weltman perpetrated a fraud against appellant and committed a continuing breach of the partnership agreement; and that Weltman came into court with unclean hands seeking equity, but failing to do equity. Appellant contends Weltman knew he could not obtain a collection agency license because he did not have an education beyond the ninth grade, and that appellant had no such knowledge of Weltman's educational limitations.

The partnership agreement entered into by the parties on March 25, 1955, contains the following provisions:

"5. It is fully understood that Kaye has owned, operated and managed and had full responsibility in the conduct of the collection agency prior to the date hereof for a period of approximately six years and is familiar with the operation of the same, whereas Weltman has had no previous experience in either the operation or conduct of a collection agency or any similar business. Kaye shall do everything possible within working hours to acquaint Weltman with the problems attendant the operation of a collection agency and give him such assistance as is possible to prepare him for the taking of the written examination prerequisite to the obtaining of an individual license by Weltman to operate a collection agency as is required by the Business & Professions Code of the State of California, Division 3, Chapter 8.

"6. Immediately upon the execution of the within instrument Kaye shall take such steps as are necessary in conjunction with Weltman to make application for licenses with the State of California for said partnership to conduct a collection agency, in the place and stead of his individual license and shall make the necessary change in licenses with the City of Los Angeles. It is distinctly understood and agreed that as a condition subsequent to the purchase of the interest in said business by Weltman that if a license is refused said partnership for any reason whatsoever, and it therefore or for any other reason becomes impossible for the parties hereto to operate a collection agency as said partners, said partnership shall terminate as of the date hereof, and any sums of money that may have been paid shall be returned to the party making said payment.

"It is expressly declared to be the essence of this agreement that a license for said partnership shall be issued by the State of California and the City of Los Angeles within the time prescribed by law after the date hereof.

"7. Weltman agrees to make such preparation as he is able, and to take the examination as is provided by law to become individually licensed to become actively in charge of the business of a collection agency, and if he is not successful on the taking of the first examination shall take said examination from time to time until he shall be successful."

Section 6887 of the Business and Professions Code reads as follows: "The Secretary of State, with the concurrence of the board, subject to the provisions of this chapter, may fix and

determine by rule and regulation the qualifications of applicants.

"The rules and regulations shall require, among other things, both of the following:

"(a) That the educational qualifications of applicants shall be at least graduation from a four-year high school, or proof satisfactory to the board that applicants are possessed of the equivalent of a four-year high school education in point of intellectual competency and achievement.

"(b) Proof satisfactory to the board that applicants have diligently and in good faith studied the subjects specified as subjects for examination."

Appellant states "It is obvious from the record and from respondent's own testimony and conduct that he cannot conceivably possess the equivalent of a four-year high school education in point of intellectual competency and achievement."

The record before us is completely lacking in information as to the type of proof required by the examining board in making its determination that an applicant is or is not possessed of the equivalent of a four-year high school education in point of intellectual competency and achievement. Deficiency in formal educational requirements is capable of being remedied by the applicant and need not operate as a permanent barrier to eligibility for a license; and the possibility of some delay in obtaining a license was apparently foreseen by the parties because the partnership agreement provides that Weltman was to "take said examination from time to time until he shall be successful."

There is no evidence in the record before us that Weltman was ever informed by anyone in authority that he could not qualify to take the examination, and there is no evidence that he ever made an application to take the examination. Under the circumstances, we are of the opinion, that it would be improper for us to attempt to prejudge how the examining board might have ruled concerning his eligibility to take the examination.

■ In his reply brief appellant contends that prejudicial error manifested itself and that a full and fair disposition of the matters in issue was prevented when the trial court sustained an objection to his attempt to cross-examine Weltman about his preparation for the collection agency examination and his qualifications and eligibility to take said examination; and, by reason thereof, appellant contends that he was denied due process and the equal protection of the law in contraven-

tion of article I, section 13 of the Constitution of the State of California and the Fourteenth Amendment to the Constitution of the United States.

In the absence of an official ruling as to Weltman's eligibility or ineligibility to take the examination, we fail to see wherein the aforesaid limitations on the right to cross-examine, as imposed by the trial court, related to any material issue before the court, or how appellant was prejudiced by reason of any ruling of the trial court pertaining thereto.

Appellant contends that the findings are not supported by the evidence and the judgment is against law. The argument made by appellant in effect is that Weltman should have had notice that something was wrong, and that there was something suspicious about the representations of appellant as early as May 1, 1955. Appellant then argues that Weltman was under a duty at that time to complain about the situation and that Weltman, in having failed to act promptly, had waived his right to rescind. In his brief, appellant has set forth considerable testimony tending to show that Weltman was familiar with the manner in which appellant had conducted business prior to as well as during the operation of the partnership. We have carefully reviewed the entire transcript, which contains conflicting testimony on most of the issues before the trial court, and we are of the opinion that there was substantial evidence to support Finding 16, as made by the court: "That it is true that on or about August 22, 1955, Weltman discovered for the first time that Kaye's representations hereinbefore set forth and referred to, and each of them, were false and untrue, and that on or about August 25, 1955, Weltman caused a written Notice of Rescission to be mailed to Kaye, and said notice was duly received by Kaye on or about August 26, 1955. Said Notice of Rescission was introduced into evidence as plaintiff's Exhibit No. 22."

■ Whether the acts of respondent gave rise to a waiver essentially poses a question of fact, and the determination made by the trial court, having been supported by competent evidence, is binding upon this court. (*Smith* v. *Bull,* 50 Cal.2d 294, 305, 306 [325 P.2d 463] ; *Ambriz* v. *Petrolane, Ltd.,* 49 Cal.2d 470 [319 P.2d 1].)

■ In *Long* v. *Newlin,* 144 Cal.App.2d 509 [301 P.2d 271], it was stated by Mr. Presiding Justice White (at pp. 512-513) : ". . . a contract of copartnership can be rescinded in the same manner and for the same causes as other contracts.

(68 C.J.S., p. 422). ■ The effect of a rescission is to void the contract *ab initio*. ■ In other words, the effect of the election of plaintiff's assignor to avoid the contract of partnership for the fraud practiced upon him is, that, as between the parties there has never existed any copartnership, although of course, having held himself out as an apparent member of the partnership prior to rescission thereof, appellant is not excused from his liability to the creditors of the copartnership. ■ Under Corporations Code, section 15039, subdivision (c), the party entitled to rescind a partnership is also entitled to be indemnified by the person guilty of the fraud or misrepresentation against all debts and liabilities of the partnership.''

Appellant also argues ''The complaint upon which respondent obtained relief did not state a cause of action; and for that reason it was error to find in his favor and enter judgment thereon.'' ■ The rule was well stated in *Domino* v. *Mobley*, 144 Cal.App.2d 24, 26, 27, 28 [300 P.2d 324] to be: ''An objection to the introduction of any evidence on the ground that the complaint does not state facts sufficient to constitute a cause of action is treated as a general demurrer to the complaint and all facts pleaded are deemed to be true. . . . ■ All that is necessary as against a general demurrer is to plead facts entitling the plaintiff to some relief. ■ The complaint is to be liberally construed. . . . ■ An objection by a defendant to the introduction of any evidence on the ground the complaint fails to state a cause of action will lie only 'where the admitted averments of the complaint justify a judgment for the defendant, i.e., where no material issue is joined which it is necessary to prove. . . .' ''

Suffice it to say with respect to this contention of appellant that in our opinion sufficient facts have been alleged to show the existence of an actionable wrong.

■ Appellant also argues that ''The trial court also entered judgment against appellant for the additional sum of $2,154.06, which was the amount respondent withdrew as a partner; there was no evidence whatever and there was no finding that this was a reasonable amount for services rendered during such period of time he was a partner.''

The Supreme Court in *Oliver* v. *Campbell*, 43 Cal.2d 298, 306 [273 P.2d 15], with reference to an action for rescission, recently stated, ''On the issue of the necessity of restoration or offer to restore the part payment for the services which Campbell had made, the rule applies that such *restoration*

*is not necessary where plaintiff would be entitled to it in any event.* (See *Kales* v. *Houghton,* 190 Cal. 294 [212 P. 21]; *Silvey* v. *Fink,* 99 Cal.App. 528 [279 P. 202]; *Mitchell* v. *Samuels,* 39 Cal.App. 134 [178 P. 336]; *Sime* v. *Malouf,* 95 Cal.App.2d 82 [212 P.2d 946, 213 P.2d 788]; Rest., Contracts, § 349.) It is clear that *plaintiff was entitled to receive the $450 paid to him either under the contract or for the reasonable value of his services."* (Emphasis added.)

With particular reference to the manner of establishing the value of legal services rendered, it was recently stated in *Barlin* v. *Barlin,* 156 Cal.App.2d 143, 149 [319 P.2d 87], that "proof of the reasonable value of legal services by expert testimony, while admissible, is not indispensable in establishing the value thereof." A specific finding as to the value of the services rendered by respondent was made in this case: "That it is true that between March 25, 1955, and August 22, 1955, Weltman rendered valuable services to Kaye in the operation of said Collection Agency and that Kaye requested Weltman to perform said services and that the reasonable value of said services was and is the sum of $2,-154.06. That said services were useful and valuable to Kaye in maintaining and carrying on said Collection Agency, and Kaye accepted said services and the benefits thereof. That said sum was heretofore paid by Kaye to Weltman in payment of said services."

█ With respect to this contention, as well as to other of the matters discussed hereinbefore, it is appropriate to quote the language of Mr. Justice Ashburn in the recent case of *Grand* v. *Griesinger,* 160 Cal.App.2d 397, 403 [325 P.2d 475]: " 'The rule is well established that a reviewing court must presume that the record contains evidence to support every finding of fact, and an appellant who contends that some particular finding is not supported is required to set forth in his brief a summary of the material evidence on that issue. Unless this is done, the error assigned is deemed to be waived. (*Kruckow* v. *Lesser,* 111 Cal.App.2d 198, 200 [244 P.2d 19].) █ It is incumbent upon appellants to state fully, with transcript references, the evidence which is claimed to be insufficient to support the findings. The reviewing court is not called upon to make an independent search of the record where this rule is ignored. (*Goldring* v. *Goldring,* 94 Cal.App.2d 643, 645 [211 P.2d 342].)' (*McCosker* v. *McCosker,* 122 Cal.App.2d 498, 500 [265 P.2d 21].)

█ 'A claim of insufficiency of the evidence to justify find-

ings, consisting of mere assertion without a fair statement of the evidence, is entitled to no consideration, when it is apparent, as it is here, that a substantial amount of evidence was received on behalf of the respondents. Instead of a fair and sincere effort to show that the trial court was wrong, appellant's brief is a mere challenge to respondents to prove that the court was right. And it is an attempt to place upon the court the burden of discovering without assistance from appellant any weakness in the arguments of the respondents. An appellant is not permitted to evade or shift his responsibility in this manner.' (*Estate of Palmer,* 145 Cal.App.2d 428, 431 [302 P.2d 629].) See also 3 Witkin, California Procedure, section 149, page 2330.''

The judgment is affirmed.

White, P. J., and Lillie, J., concurred.