Joseph **STASZAK** (81–1476) **and Richard** Staszak (81–1462), **Plaintiffs-Appellants,**

v.

Walter **ROMANIK, Defendant-Appellee.**

Nos. 81–1462, 81–1476.

United States Court of Appeals, Sixth Circuit.

Argued June 14, 1982.

Decided Oct. 7, 1982.

Michael E. Marr, Baltimore, Md., for Joseph Staszak.

Daniel W. Hammer, William R. Stewart, Thompson, Hine & Flory, Cleveland, Ohio, for Richard Staszak.

Richard G. Smith, Smith & Brooker, Bay City, Mich., Francis E. Lindsay, Lindsay & Lindsay, Cheboygan, Mich., for defendant-appellee.

Before LIVELY and JONES, Circuit Judges, and CECIL, Senior Circuit Judge.

LIVELY, Circuit Judge.

This diversity action deals with questions of partnership law arising from disagreements with respect to a Michigan business engaged in the growing, harvesting and selling of Christmas trees. Two questions are presented for decision: (1) Did the district court err in holding that one member of a three-person partnership should forfeit his entire partnership interest for "failure of consideration"? and (2) Did the district court err in holding that assets of a two-person partnership formed in 1959 were not controlled by the terms of a partnership agreement executed when the two 1959 partners joined with a third partner in 1969 to form a three-person partnership?

I.

The plaintiff Joseph Staszak and the defendant Walter Romanik were first cousins. Joseph Staszak lived in Baltimore, Maryland for a number of years, and Walter Romanik, who was raised near Cheboygan, Michigan, has lived in Michigan continuously since 1957 where he has been engaged in the Christmas tree business. In that year Walter Romanik planted Christmas trees on 20 acres of land which he owned near Cheboygan and, at the request of Joseph Staszak, planted Christmas trees on 80 acres of land which Joseph Staszak owned near Boyne Falls, Michigan. In 1959 the cousins entered into an oral agreement to carry on the business of planting, harvesting and selling Christmas trees as a partnership. It was agreed that Walter Romanik would furnish the labor and Joseph Staszak would supply the necessary working capital and that profits and losses would be divided evenly between them. Though this agreement was never reduced to writing, the business operated as a partnership under the name of "North Star Tree Company" (North Star). Between 1959 and 1969 various tracts of land were purchased by the partners and other tracts were leased for the purpose of growing Christmas trees. The purchased lands were paid for with partnership funds as were the rents on leased property. In June, 1969 the partnership was engaged in various stages of cultivating and growing Christmas trees on 1,573 acres, and its total roster of employees included 94 full-time and part-time workers. Walter Romanik managed the entire operation.

The first Christmas trees were harvested and sold by the partnership in 1966, resulting in a loss of $9,300. The partnership sustained a loss of $14,587 in 1967 and a loss of $12,053 in 1968. All of these losses were split evenly between Romanik and Joseph Staszak. Walter Romanik began receiving a salary for his management services in 1968.

In January 1969 Walter Romanik entered into discussions with Dr. Nicholas Lentini regarding the purchase of a Christmas tree business owned by Lentini and known as "Sno Kist Tree Corporation." With Joseph Staszak's approval, Walter Romanik negotiated for the purchase of Sno Kist Tree Corporation under terms which required a $100,000 down payment. After inconclusive discussion with two Cheboygan banks, Joseph Staszak returned to Baltimore and raised $134,000 in cash by mortgaging property he owned there and by obtaining loans from friends and relatives. In June 1969 a purchase agreement was executed by which Dr. and Mrs. Lentini and Sno Kist Tree Corporation sold certain property to Walter Romanik, Joseph Staszak and Richard Staszak, Joseph's son, as partners. The purchasers made a down payment of $100,000 furnished by Joseph Staszak to the sellers, and the balance of the purchase price was to be paid from operating revenues of the new three-person partnership. The new partnership acquired the following assets from the Lentinis and the corporation: (1) A lease from January 15, 1969 to January 1, 1981 on field and office equipment used in the sellers' Christmas tree business. This equipment was listed on "Exhibit A" which was attached to the agreement. (2) The registered trademark, "Sno Kist." (3) The right to harvest and market until January 1, 1981 all salable Christmas trees on real

property owned by Lentini or the corporation as listed on "Exhibit C," attached to the agreement. (4) An assignment of certain leases and contracts which the sellers held with other owners of real property for harvesting rights to Christmas trees located on their land. These leases and contracts were listed on "Exhibit B," attached to the agreement. The partnership did not acquire title to any real estate by purchase from the Lentinis or the corporation.

On October 16, 1970 Walter Romanik, Joseph Staszak and Richard Staszak entered into a written partnership agreement which provided that each year the profits and losses of the partnership should be allocated equally to the three partners. The firm name of the partnership was to be Romanik, Staszak and Staszak, d/b/a Sno Kist Tree Company, a partnership (hereafter Sno Kist). In addition to providing for an annual balance sheet and profit and loss statement to be prepared by a certified public accountant, the agreement dealt with contribution of capital, services to be performed by partners and equalization of contributions as follows:

### V

The capital of the partnership shall be that real estate described in Schedule A which is attached hereto and incorporated herein by reference and the personal property which is described in Schedule B and attached hereto and incorporated herein by reference.

### VI

The contribution of each partner into the business shall be his interest as owner in the property described in Schedule A and B and also any other property or money which may be from time to time conveyed to the partnership.

\*   \*   \*   \*   \*   \*

### XII

Each partner may work for the partnership in various capacities as determined to be in the mutual best interests of the company. Each and every partner so working for the company shall be paid, in addition to his share of the profits, a salary commensurate with his work to be agreed on by all of the partners.

\*   \*   \*   \*   \*   \*

### XIV

For purposes of this agreement, the parties hereto shall be equal partners with each sharing ⅓ of the profits of this business. However, the partners acknowledge that all of the parties hereto have not made equal capital contributions to the company. It shall be the intent of the parties hereto that at the end of each business year distribution of profits shall be made in such a manner as to eventually equalize each of the partner's capital contribution. There shall be no set requirements for this distribution, but this shall be decided each year by the parties hereto.

After the year 1969 North Star and Sno Kist were operated as a single business. No separate books were kept for North Star, and the accountant employed by Sno Kist testified that he merged the records of the two partnerships "for accounting purposes." After 1969 North Star filed no partnership income tax returns, and each of the partners showed on his individual income tax return income from only one partnership— Sno Kist. Between 1972 and 1974 all of the real estate which had been acquired by the North Star partners between 1959 and 1969 was deeded to Sno Kist. No transfer taxes were paid with the recording of these deeds, and the deeds contained a statement that each transfer was exempt from tax because it was intended to confirm title which had already vested in Sno Kist. Throughout the existence of the Sno Kist partnership all profits were divided equally among Walter Romanik, Joseph Staszak and Richard Staszak.

During the first year's harvest after formation of the three-way partnership Richard Staszak went to Michigan and stayed throughout the harvest season, overseeing work on a portion of the operation. Richard Staszak spent part of each succeed-

ing year, during the harvesting season, in Michigan. Romanik began questioning the allocation of profits and equity in the partnership as early as 1972, complaining that Richard Staszak was not performing services required by the agreement. So far as the record shows these complaints were made to the accountant for the partnership or to Joseph Staszak. There is no evidence that Walter Romanik ever complained to Richard Staszak. Nevertheless, he took the position that Richard Staszak should move to Michigan and work full time in the Christmas tree business rather than come only for the harvesting season. By 1975 relations among the partners had deteriorated substantially, and in 1976 Joseph and Richard Staszak attempted to purchase the interest of Walter Romanik in the business. When Romanik refused to sell, Joseph and Richard Staszak filed this action seeking to enforce a buy-sell agreement which had been signed contemporaneously with the partnership agreement. Walter Romanik filed a counter-claim seeking dissolution of the partnership on the ground that Richard Staszak had failed to carry out his agreement to work full time in the business of the partnership, particularly to assist Walter Romanik in managing it. The case was referred to a magistrate and, by agreement, was tried without a jury. The magistrate filed a memorandum opinion containing findings of fact and conclusions of law and recommendations to the district judge for entry of judgment.

The magistrate found that the buy-sell agreement was inoperative for a number of reasons, including his determination that it would be unconscionable to require Walter Romanik to sell his interest in the business for the amount stated in the buy-sell agreement, an amount which had been fixed at the inception of the partnership and which had not been updated to reflect the partnership's successful operations. Turning to the counter-claim, the magistrate found that the partnership should be dissolved because at least two of the partners, Walter Roman-

ik and Richard Staszak, had breached duties which they owed to the partnership. Though the partnership agreement did not so state, the magistrate found that there was an implied agreement that Richard Staszak should move to Michigan and work full time for Sno Kist. Finding that Richard Staszak had made no capital contribution at the formation of the partnership, the magistrate concluded that Richard's failure to render the required services to the partnership constituted a failure of consideration. Accordingly, the magistrate held that "Richard Staszak is not entitled to ⅓ of the profits of the partnership or the status of a full partner." The magistrate found that the real property purchased by Romanik and Joseph Staszak between 1959 and 1969 was partnership property of North Star. The magistrate further found that the written partnership agreement of Romanik, Staszak and Staszak "controls and pertains to only the leases or cutting rights and personal property acquired in the Sno Kist acquisitions and not to property acquired by Walter Romanik-Joseph Staszak d/b/a North Star Tree Company."

Richard Staszak was directed to refund to the partnership $80,848.29 representing distributions of profits since formation of Sno Kist. The magistrate also found that Walter Romanik had breached his duty to the partnership by retaining profits on his separate account in the amount of $199,457.30 from the sale of Christmas trees, and Romanik was directed to pay to the Estate of Joseph Staszak, who died during the litigation, the sum of $99,278.65. After objections were filed by all parties, the district judge accepted the findings, conclusions and recommendations of the magistrate and entered judgment accordingly.

Richard Staszak and the Estate of Joseph Staszak [1] appeal from the finding that Richard Staszak was not entitled to one third of the partnership profits or the status of a partner and from the finding that property purchased by Romanik and Joseph Staszak

---

1. Though apparently against its pecuniary interests, the estate takes a position which is consistent with that of Joseph Staszak at the trial. Of course, tax liability of the estate is affected by the ultimate decision on these issues.

as partnership property of North Star was not controlled by the Sno Kist partnership agreement. Richard Staszak did not appeal from the finding that he breached the partnership agreement by failing to move to Michigan and work full time for Sno Kist. Romanik did not appeal from the finding that he had breached the partnership agreement and related requirement that he refund his outside profits.

## II.

▮▮▮ Michigan adopted the Uniform Partnership Act (UPA or the Act) in 1917, P.A. 1917, No. 72 (now codified at §§ 449.1 et seq., Michigan Compiled Laws Annotated). The preamble stated the purpose of the enactment:

> P.A.1917, No. 72, Eff. Aug. 10
>
> AN ACT to define what shall constitute partnerships; the relation of partners to persons dealing with the partnership; the relation of partners to one another; to provide for the dissolution and winding up of partnerships; and to make uniform the law relating thereto.

The magistrate found that Richard Staszak was a partner at the inception of the Sno Kist partnership. This finding was correct since Michigan Compiled Laws Annotated (MCLA) § 449.6 defines a partnership as an association of two or more persons to carry on as co-owners a business for profit. Richard Staszak did associate with Walter Romanik and Joseph Staszak for the purpose of carrying on as co-owners for profit the Sno Kist Christmas tree business. This is clear from the written agreement. Further, for more than five years Richard Staszak shared equally with Walter Romanik and Joseph Staszak in the profits and losses of Sno Kist. Under MCLA § 449.7 (Rules for determining the existence of a partnership), the receipt by a person of a share of the profits of a business is prima facie evidence that he is a partner.

The magistrate found that both Walter Romanik and Richard Staszak breached the partnership agreement. Romanik's breach consisted of dealing with partnership assets for his individual profit, a breach of the fundamental fiduciary relationship between partners as expressed in MCLA § 449.21:

> (1) Every partner must account to the partnership for any benefit and hold as trustee for it any profits derived by him without the consent of the other partners from any transaction connected with the formation, conduct, or liquidation of the partnership or from any use by him of its property;

For this breach the magistrate required restitution. Though Richard Staszak worked for the partnership during the entire harvesting season in 1970 and during at least a portion of subsequent harvesting seasons the magistrate concluded that his failure to move permanently to Michigan and assume a fulltime management role in the affairs of Sno Kist constituted a failure of consideration for which he was required to forfeit his entire interest in the partnership.

▮▮▮ Since the UPA is intended to be comprehensive, whenever its provisions cover a situation involving a partnership those provisions should be applied. Only when presented with a case not provided for in the Act should a court be governed by general rules of law and equity. MCLA § 449.5. The Act provides in MCLA § 449.32 for dissolution by a decree of court and in MCLA § 449.38 determines the rights of partners in partnership property upon dissolution. When dissolution is caused by the wrongful act of a partner, that partner is entitled to his share of partnership property subject to the right of partners who have not breached the agreement to recover from him any damages caused by his breach. MCLA § 449.38(2)(c)(I).

Instead of applying the foregoing provisions of the UPA the magistrate determined that Richard Staszak should, in effect, be removed retroactively as a partner, should be denied all equity in partnership assets and should be required to refund to the partnership all profits previously distributed to him. Romanik argues on appeal that this order was within the authority of a court of equity based on its finding that Richard's failure to move to Michigan and

work full time for Sno Kist constituted a failure of consideration.

It is clear that at least part of the consideration for formation of the Sno Kist partnership was the agreement of each partner to contribute his interest in real and personal property transferred to the partnership as capital and to permit distributions of profit in such a manner as to equalize the capital contribution of each.

■■ At the time of the purchase from the Lentinis and the corporation, Joseph Staszak provided the down payment of $100,000 and an additional $34,000 as working capital. These are the only capital contributions to the three-way partnership which are clearly identified in the record. The partnership agreement described the capital of the partnership as the real estate described in Schedule A and the personal property described in Schedule B. The agreement recited that both schedules were attached, but neither was ever produced at the trial. The following paragraph of the agreement (VI) provided that the contribution of each partner consisted of his interest in the property described in Schedules A and B and any other property or money "conveyed" to the partnership. Richard Staszak had a one-third interest in the assets purchased from the Lentinis and the Sno Kist Tree Corporation which became the property of the Sno Kist partnership. Yet the magistrate found that Richard's only contribution was to consist of personal services to the partnership. Further, Richard Staszak's share of the profits of the partnership between 1970 and 1977 was substantially in excess of the approximately $80,000 which he withdrew. Paragraph XIV of the agreement provided that the undistributed profits of the partners were to be applied to equalize their capital contributions. The finding that Richard Staszak made no contribution to the capital of the partnership was clearly erroneous. Thus, even though Richard Staszak failed to perform services as promised, there was not a total failure of consideration.

Richard Staszak has not appealed from the finding that there was an implied agreement that he would move to Michigan and work full time for the partnership or from the conclusion that his breach of this agreement was sufficient to require dissolution of the partnership. He contends, however, that the proper remedy for this breach is that provided in MCLA § 449.38. We agree.

■ There are no Michigan cases directly on point. While Michigan recognizes the rule that failure of consideration by one contracting party justifies the other party to the contract in refusing to perform his obligations, its courts have never applied the rule to deprive a partner of his equity. *Jinkner v. Town & Country Lanes, Inc.,* 10 Mich.App. 596, 157 N.W.2d 317 (1968), applied the rule to an ordinary commercial contract. *Nogaj v. Nogaj,* 352 Mich. 223, 228, 89 N.W.2d 513 (1958), dealt with a condition subsequent in a deed between a husband and wife. *Perkins v. Brown,* 115 Mich. 41, 72 N.W. 1095 (1897), *Folkerts v. Marysville Land Co.,* 236 Mich. 294, 210 N.W. 231 (1926), and *Palmer v. Fox,* 274 Mich. 252, 264 N.W. 361 (1936), fall into the same category. They demonstrate that Michigan follows the general rule that failure of consideration provides a legal excuse for non-performance of a contract. None dealt with partnerships. Interestingly, even in ordinary contract cases where a forfeiture might be declared for failure of consideration, Michigan courts have been reluctant to apply this drastic remedy. *E.g., John v. McNeal,* 167 Mich. 148, 152–53, 132 N.W. 508 (1911).

The only Michigan partnership case relied upon by Romanik in support of this argument is *Bernstein v. Ross,* 22 Mich.App. 117, 177 N.W.2d 193 (1970) *Bernstein* did not deal with a failure of consideration at all. Rather, it concerned provisions of a partnership agreement which gave one partner less than an equal right in the management of partnership affairs. The court held that partners may agree to something other than equal rights in management. Cases from other jurisdictions which have adopted the UPA support the Staszaks rather than Romanik.

In *Walsh v. Atlantic Research Associates, Inc.,* 321 Mass. 57, 71 N.E.2d 580 (1947), the court held that a partner does not lose his right to accrued partnership profits by breach of the partnership agreement, though his share is subject to charges in final accounting. This rule is applied even when the breach is committed in bad faith. *See Fisher v. Fisher,* 352 Mass. 592, 227 N.E.2d 334, 336 (1967); *Engel v. Vernon,* 215 N.W.2d 506, 515 (Iowa 1974). Numerous California cases, both before and after adoption of the UPA, have held that a partner whose wrong causes dissolution of a partnership does not forfeit his partnership interest, but is entitled to receive it, less the damages caused by his breach. *E.g., Gardner v. Shreve,* 89 Cal.App.2d 804, 202 P.2d 322, 324 (1949); *B. K. K. Company v. Schultz,* 7 Cal.App.3d 786, 86 Cal.Rptr. 760, 767 (1970). Calling it an "eminently sound" rule to be applied where the Uniform Partnership Act has been adopted, the court in *Thompson v. McCormick,* 149 Colo. 465, 370 P.2d 442, 446 (1962), stated:

> Once a partnership is found to exist, the fact one partner has failed to make the required capital contribution is no reason to impose a forfeiture when the contribution can be deducted from his share of the profits. (Citation omitted).

*See also Dobson v. Dobson,* 594 S.W.2d 177, 181–82 (Tex.Civ.App.1980).

By implication, at least, the Michigan Court of Appeals has indicated that it would follow the same rule which other states operating under the UPA have found proper. In *Goldstein v. Kern,* 82 Mich.App. 723, 728, 267 N.W.2d 165 (1978), the court held that sale by one partner of the only property of a partnership "caused its wrongful dissolution, making defendant liable to plaintiff for damages caused by the dissolution." In *Goldstein,* the unilateral act of the defendant made further continuation of the partnership impossible, since the only purpose for which it had been formed was to operate a merchandising business, the property which was sold. Even in these circumstances, the court did not deprive the partner who acted wrongfully of his interest in the partnership's assets. It found, rather, that he was liable in damages to his innocent partner.

In this case the magistrate found that a partnership was formed. It is clear that Richard Staszak made some contribution to capital—his share of the assets purchased by the three partners in equal shares from the Lentinis and the former Sno Kist Tree Corporation. The partners were equally liable for payment of the balance of the purchase price above the down payment of $100,000. Richard Staszak made further contributions of capital by withdrawing less than his total share of partnership profits. Finally, he performed services for the corporation each year until 1976. His breach of partnership duties consisted only of his failure to move to Michigan and work full time for the partnership. The other partners are entitled to recover any damages which this breach caused the partnership. But forfeiture of Richard's interest was not a permitted sanction for the breach.

The judgment of the district court is reversed insofar as it holds that Richard Staszak was not entitled to a partner's share in the assets of the partnership and insofar as it directs Richard Staszak to repay to the partnership the amounts which he has previously withdrawn as distributions of partnership profits. Upon remand the district court will determine the amount of damages, if any, sustained by the partnership as the result of Richard Staszak's breach and award such damages equally to the other partners pursuant to MCLA § 449.38(2)(c).

### III.

The magistrate found that the parties did not intend that the partnership agreement would cover the assets of the 50/50 partnership, North Star. This is a finding of fact which cannot be disturbed unless it is clearly erroneous. Rule 52(a), F.R.Civ.P. The magistrate based his finding on several discrete items of evidence. Romanik testified that the partnership agreement was intended to cover only the newly-purchased Sno Kist business. Romanik also testified that the merger of the North Star assets into

the financial statements of Sno Kist was accomplished without his knowledge or consent. In the third place, Romanik testified that Schedules A and B to the partnership agreement referred to the assets purchased from the Lentinis and the former Sno Kist Tree Corporation. Finally, the magistrate relied upon the fact that the partnership agreement was silent as to the status of North Star and the rights and interests of its partners, and that legal title to real estate which was partnership property of North Star was not conveyed to the Sno Kist partnership at the time of its formation, though it was all conveyed between 1972 and 1974. Though there was evidence which conflicted with Romanik's testimony, the magistrate made a determination on the record that Walter Romanik was a credible witness.

The appellants Richard Staszak and the Estate of Joseph Staszak seek to have the finding with respect to partnership assets held "clearly erroneous," particularly on the basis of its asserted inconsistency with other undisputed findings of the magistrate. The magistrate found (No. 21) that "for accounting purposes only," the bookkeeping and account entries of North Star were merged with those of Sno Kist by the Sno Kist accountant, and that income tax returns for Sno Kist only were filed after 1969. The magistrate also found (Nos. 30, 31, 32 and 41) that all profits reflected in the merged accounts were divided equally among the three partners from 1970 onward. Finally, the magistrate found (No. 34) that between 1972 and 1974 all North Star real estate was conveyed to Sno Kist. The Staszaks also rely on alleged contradictions between the testimony of Romanik and his pleadings, and the general implausibility of the finding.

Considering first the arguments unrelated to the magistrate's specific findings, it is contended that Romanik's counter-claim admitted that both the North Star assets and the newly purchased Sno Kist assets were included in the three-way partnership. A careful reading of the counter-claim reveals no such admission. Romanik averred that in June 1969 he and Joseph Staszak considered buying the Sno Kist Tree Corporation and that prior to the purchase "there was an agreement and understanding between the parties that from that time forward, Richard Staszak, who is the son of Joseph Staszak, would enter the co-partnership and make contributions thereto . . . ." The Staszaks read the quoted language as meaning that Richard would enter into the existing partnership of Staszak and Romanik, d/b/a North Star Tree Company. This is nowhere stated in the pleading, and the pleading can quite naturally be read to mean that Richard Staszak was to enter the new partnership, Romanik, Staszak and Staszak d/b/a Sno Kist. We find no conflict between Romanik's pleading and his testimony.

Nor do we find the claim of Romanik or the finding of the magistrate implausible. For ten years two partners had combined their efforts and capital to establish and build a business which was on the verge of profitability. In doing so they had jointly acquired valuable real estate, leaseholds and working interests. At the time they were preparing to acquire other property which would result in more than a twofold increase in their business the partners agreed to form a new partnership with a third equal partner whose immediate contribution to the capital of the new partnership would be his one-third interest in the newly acquired assets. He was also to perform services for the partnership for which he would be paid a salary. There was no reason to vest in this partner any interest in property already owned by the other two partners. As we conclude, *infra,* a decision was apparently made subsequently to bring this real estate into the Sno Kist partnership. But it is not implausible to find that it was not covered by the partnership agreement at the beginning.

Turning to the arguments based on the magistrate's findings, the fact that the accounts of the two partnerships were merged is also inconclusive. The accountant testified that the books were merged "for accounting purposes." The entire business, including sales of trees grown on land

originally acquired by North Star as well as those grown on subsequently acquired Sno Kist properties, was operated as a single unit after 1969. The fact that the entire business was treated as one for operating purposes is not necessarily related to the ownership of property. Many of the trees were grown on leased land, and the equipment acquired from the former Sno Kist Tree Corporation was merely rented, not purchased. Since all of the assets, both of North Star and of Sno Kist, were utilized in a single operating entity, it was convenient to merge the accounts "for accounting purposes" and to file a single partnership tax return.

The fact that the profits which were distributed equally among the three partners included receipts from trees sold off real estate purchased with North Star partnership funds does not require a finding that such property was controlled by the 1970 Sno Kist agreement. The North Star real estate could have been treated prior to its transfer to Sno Kist in the same way as the leased land included in the Lentini purchase.

The Staszaks also argue that it was clearly erroneous for the magistrate to find that the missing schedules to the partnership agreement described only the property purchased from the Lentinis. They point out that there were three exhibits to the Lentini purchase agreement whereas the partnership agreement purports to incorporate only two schedules. Further, one of the schedules was described in the agreement as listing real estate included in the property of the partnership and no real estate was purchased from the Lentinis or the Sno Kist Tree Corporation. These apparent contradictions are inconclusive. Exhibit A to the sales agreement listed field and office equipment, all personal property. Exhibit B assigned leases and contracts which gave harvesting rights to Sno Kist respecting real estate owned by others while Exhibit C leased to the purchasers certain harvesting rights to trees on property owned by the Lentinis or Sno Kist Tree Corporation. In view of Romanik's positive testimony that the schedules referred to the property listed in the exhibits, we cannot hold that it was clearly erroneous for the magistrate to so find. It could be inferred that the leases and contracts giving the right to harvest trees from real estate listed in two separate exhibits had been combined into a single schedule.

We conclude that the magistrate's finding to the extent it held that the parties did not intend to include the real estate of North Star in the three-way Sno Kist partnership at its inception is not clearly erroneous. However, the real estate acquired by Romanik and Joseph Staszak prior to 1969 was eventually conveyed to Sno Kist. The magistrate made no finding with respect to the ultimate disposition of the North Star property. The subsequent transfer of the real estate which was formerly the property of North Star to the Sno Kist partnership converted that real estate into partnership property. MCLA § 449.-8(1) provides:

> All property originally brought into the partnership stock *or subsequently acquired, by purchase or otherwise,* on account of the partnership is partnership property. (Emphasis added).

As of April 1974 all of the real estate which had been acquired by the two-person partnership of Romanik and Staszak had been transferred to the three-person partnership doing business as Sno Kist. Thus this real estate became partnership property under MCLA § 449.8(1). Pursuant to paragraph VI of the partnership agreement it constituted a contribution of capital by Joseph Staszak and Walter Romanik ("other property . . . from time to time conveyed to the partnership.") The magistrate specifically denied Romanik's claim for rescission of the partnership agreement on the ground of fraud, and there was no claim that these later transfers were fraudulent. In fact, there was no evidence of any kind which would remove these transfers from the operation of MCLA § 449.8(1) and paragraph VI. Accordingly, the former North Star property conveyed between 1972 and 1974 to Sno Kist will be included in the final

accounting of the Sno Kist partnership and treated as a later contribution of capital by Walter Romanik and Joseph Staszak.

The judgment of the district court is reversed, and the case is remanded for further proceedings consistent with this opinion.