In re BELL & BECKWITH, Debtors.

Patrick A. McGRAW, Trustee, Plaintiff,

v.

Roscoe R. BETZ, Jr., et al., Defendants.

Bankruptcy No. 85–0024.

United States Bankruptcy Court,
N.D. Ohio, W.D.

Jan. 19, 1990.

Fuller & Henry, Toledo, Ohio, for plaintiff.

Stephen P. Harbeck, Washington, D.C., for SIPC.

Edward F. Zoltanski and Russell Miller, Toledo, Ohio, for Roscoe R. Betz, Jr.

Susan M. Pioch, Toledo, Ohio, for Robert R. Coon, II.

Randy L. Reeves, Lima, Ohio, for Louis Haubner, Jr.

Charles V. Contrada and Dennis F. Keller, Holland, Ohio, for Donald C. Henninger.

Philip R. Joelson, Toledo, Ohio, for J. Robert and Marilyn J. Jesionowski.

David M. Schnorf, Toledo, Ohio, for Thomas L. McGhee.

David W. Wicklund and Deborah L. Kovac, Toledo, Ohio, for John E. Thompson and George M. Todd.

Frank J.P. McManus, Toledo, Ohio, Attorney for Edward P. Wolfram, Jr.

David P. Rupp, Jr., Archbold, Ohio, for Beverly Betz.

## MEMORANDUM OPINION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court on the Trustee's Motion to Strike Seventh Defense and For Summary Judgment on Defendant John E. Thompson's Counterclaim. The Defendant, John E. Thompson, has filed a Memorandum in Opposition to Plaintiff's

Motion to Strike and Motion for Summary Judgment. The Trustee and the Securities Investor Protection Corporation have filed a Reply Memoranda in response to the Defendant's Motion in Opposition. The Court has reviewed the written arguments of counsel, as well as the entire record in this case. Based on that review, and for the following reasons, the Court finds that the Defendant's Seventh Defense should be stricken and the Trustee's Motion for Summary Judgment on the Defendant's Counterclaim should be granted.

## FACTS

The facts in this case do not appear to be in dispute. The Plaintiff in this action is the Trustee for the liquidation of the Debtor in the underlying bankruptcy proceeding. Bell & Beckwith, the Debtor, was a stock brokerage located in Toledo, Ohio. The brokerage operated as a partnership and was managed by Edward P. Wolfram, Jr., (hereinafter "Mr. Wolfram"). Starting in approximately 1973, Mr. Wolfram began systematically diverting cash and securities held by the brokerage in customer margin accounts. Mr. Wolfram's fraud was discovered by a Securities & Exchange Commission examiner in 1983.

In June of 1975, John E. Thompson became a general partner in Bell & Beckwith. At the time the fraud of Mr. Wolfram was discovered, Mr. Thompson was still a general partner. *See, John E. Thompson's Answer and Counterclaim,* ¶ 112; *Affidavit of Patrick A. McGraw, Trustee,* (October 26, 1987), Exhibit 1 (Certificate of Limited Partnership on file with the Lucas County Recorder on February 5, 1983). Moreover, Mr. Thompson's name appeared on the letterhead of Bell & Beckwith. *See, Affidavit of Trustee,* ¶ 7, and Exhibit 8.

One of Mr. Thompson's duties as a partner in Bell & Beckwith was to execute and submit Financial and Operational Combined Uniform Single Reports (hereinafter "FOCUS Reports") to the Securities and Exchange Commission (hereinafter "SEC") certifying that the brokerage had sufficient "net capital" to comply with the requirements set forth in the Securities and Exchange Act of 1934. *See, Affidavit of Trustee,* ¶ 5, and Exhibits 2–6. ("Net Capital" is a reserve fund that brokers and dealers are required to maintain by Securities and Exchange Act Rule.)

On April 12, 1985, John E. Thompson filed an Answer and Counterclaim to the Trustee's Complaint against the partners. In his Answer, Mr. Thompson asserted that he had been induced to become a partner of Bell & Beckwith on the basis of false, misleading and fraudulent financial information provided to him by Bell & Beckwith, as a result of the malfeasance of Mr. Wolfram, and he was therefore entitled to rescind his partnership agreement with Bell & Beckwith *ab initio*. *See, Answer of Defendant, John E. Thompson,* Seventh Defense, at 13. In his Counterclaim, Mr. Thompson requests that the Court allow him to rescind the partnership contract, and hold that it was void *ab initio*. He also seeks to have the Trustee's Complaint against him dismissed, because he is not liable for the debts of the partnership. Costs, expenses, and attorneys' fees are also sought by the Defendant.

With his Memorandum in Opposition to Plaintiff's Motion to Strike and Motion for Summary Judgment, Defendant Thompson filed an Affidavit which states he did not learn the date that Mr. Wolfram commenced his fraudulent activities until June of 1985. *See, Affidavit of John E. Thompson,* 4, at 2. He further avers that if he had known of the defalcations of Edward P. Wolfram, Jr., he would not have become a partner in Bell & Beckwith. *Id.,* 5 at 2.

## LAW

The Trustee's Complaint seeks a judgment against the partners of Bell & Beckwith based on Bankruptcy Code section 723(a) and Ohio partnership law, O.R.C. §§ 1775.01 *et seq.* The issue before the Court is whether John E. Thompson's Seventh Defense and Counterclaim should be stricken pursuant to the Trustee's Motion. The Court will address each of the arguments in opposition to the Motion for Summary Judgment.

Ohio has adopted the Uniform Partnership Act (hereinafter "UPA"). The Defendant seeks to rescind the partnership agreement under O.R.C. 1775.38, (UPA § 39) which states:

**1775.38 Rights of partner rescinding partnership contract for fraud**

Where a partnership contract is rescinded on the ground of the fraud or misrepresentation of one of the parties thereto, the party entitled to rescind is, without prejudice to any other right, entitled:

(A) To a lien on, or right of retention of, the surplus of the partnership property after satisfying the partnership liabilities to third persons for any sum of money paid by him for the purchase of an interest in the partnership and for any capital or advances contributed by him;

(B) To stand, after all liabilities to third persons have been satisfied, in the place of the creditors of the partnership for any payments made by him in respect of the partnership liabilities;

(C) To be indemnified by the person guilty of the fraud or making the representation against all debts and liabilities of the partnership.

In support of his Seventh Defense, Mr. Thompson asserts that O.R.C. § 1775.38 does not provide that a partner rescinding for fraud is to be held individually liable to the third-party creditors of the partnership. Instead, the Defendant argues that rescission renders the partnership agreement void *ab initio*, with no liability attaching to a partner who was fraudulently induced to enter the partnership agreement. In support of this contention, the Defendant cites *Oteri v. Scalzo*, 145 U.S. 578, 588, 12 S.Ct. 895, 898, 36 L.Ed. 824, 827 (1892); *Hanes v. Giambrone*, 14 Ohio App.3d 400, 471 N.E.2d 801 (1984) and Note, *Partnership–Creditor's Rights–Liability of a Partner Fraudulently Induced to Enter into the Partnership Agreement*, 11 Vand.L.R. 942, 944–945 (1958). The Plaintiff contends that Mr. Thompson is liable for the debts of the partnership and cannot rescind the partnership agreement *ab initio*. The Trustee cites *Van Andel v. Smith*, 248 F.2d 915

(10th Cir.1957) and *Securities and Exchange Commission v. duPont, Homsey & Company*, 204 F.Supp. 944 (D.Mass.1967).

While some courts characterize a partnership agreement procured by fraud as "void", other courts term it "voidable". In either case, the result remains the same. In addition to the Supreme Court's decision in *Oteri, supra*, a number of other courts have held that when a defrauded partner is permitted to rescind the partnership agreement, it has the effect of voiding the contract *ab initio*. See, e.g., *Knapp v. First National Bank & Trust Co.*, 154 F.2d 395, 398 (10th Cir.1946); *Volpe v. Schlobohm*, 614 S.W.2d 615, 618 (Tex.Civ.App.1981); *Solomont v. Polk Development Co.*, 245 Cal.App.2d 488, 54 Cal.Rptr. 22, 27 (1966); *Weltman v. Kaye*, 167, Cal.App.2d 607, 615, 334 P.2d 917, 920 (1959); *Long v. Newlin*, 144 Cal.App.2d 509, 512, 301 P.2d 271, 273 (1956); See also, 2 Z. Cavitch, *Business Organizations* § 20.06[2] at 20–43 (1989); 68 C.J.S. *Partnership* § 13 at 423.

However, even if the Bell & Beckwith partnership agreement were held to be void *ab initio* based on the Defendant's Counterclaim for rescission, it would not affect Mr. Thompson's liability to third-party creditors. *Van Andel v. Smith*, 248 F.2d 915, 918 (10th Cir.1957); *Securities and Exchange Commission v. duPont, Homsey & Company*, 204 F.Supp. 944, 946 (D.Mass.1962), *rev'd on other grounds, Legate v. Mahoney*, 334 F.2d 704 (1st Cir. 1964), *reconsidered*, 348 F.2d 164 (1st Cir. 1965); *Volpe v. Schlobohm*, 614 S.W.2d 615, 618 (Tex.Civ.App.1981); *Weltman v. Kaye*, 167 Cal.App.2d 607, 614, 334 P.2d 917, 920 (1959); *Long v. Newlin*, 144 Cal. App.2d 509, 512, 301 P.2d 271, 273 (1956); 2 Z. Cavitch, *Business Organizations* § 20.06[2] at 20–43 (1989); 1 R. Rowley, *Rowley on Partnership* § 39.0(C) at 753 (2nd ed. 1960); 2 J. Barrett & E. Seago, *Partners and Partnership Law and Taxation* Ch. 8, § 3.5 (1965 Cumulative Supplement at 5); A. Bromberg, *Crane and Bromberg on Partnership* § 85 at 487 (1968); J. Crane, *Handbook on the Law of Partnership* Ch. 8, § 85 at 458 (1952); 59A Am.Jur.2d, *Partnership* § 904 at 683.

The general rule has been summarized in Cavitch's *Business Organizations, supra:*

When a partner is fraudulently induced to enter into a partnership agreement, he may bring an action for rescission of the contract. The effect of a rescission is to void the contract *ab initio.* As between the parties, it is as though a partnership never existed, but as to third persons who have dealt with the firm, the plaintiff is liable since he had held himself out as a member of the partnership prior to rescission.

2 Z. Cavitch, *Business Organizations* § 20.06[2] at 20–43 (1989).

Thus, assuming, *arguendo,* that rescission is proper under the facts in this case, it provides the Defendant no legal protection from his liability for the debts of the partnership. Consequently, rescission being a matter affecting only the relationship between the partners, any action to rescind the partnership agreement may not necessarily be properly brought before this Court.

The Defendant's theory based on comments in *Hanes v. Giambrone,* 14 Ohio App.3d 400, 471 N.E.2d 801 (1984) does not support a different result. Under O.R.C. § 1775.04, to the extent that the Uniform Partnership Act does not provide otherwise, the rules of law and equity govern. *See,* O.R.C. § 1775.04; *Hanes v. Giambrone,* 14 Ohio App. at 405, 471 N.E.2d at 807; *Staszak v. Romanik,* 690 F.2d 578, 583 (6th Cir.1982). As the *Hanes* court notes, the UPA does not expressly authorize rescission for fraud. However, it does appear to assume the availability of this remedy by providing certain consequences when a partnership is rescinded on the grounds of fraud. *See, Hanes v. Giambrone,* 14 Ohio App. at 405, 471 N.E.2d at 807; *see also,* 59A Am.Jur.2d, *Partnership* § 871 at 666; A. Bromberg, *Crane and Bromberg on Partnership* Ch. 8, § 85 at 486 n. 19 (1968). It appears to be the Defendant's position that reference to the older common law right to rescind a partnership agreement for fraud would allow him to escape liability. This is because

under older pre-UPA case law, the partnership agreement becomes void *ab initio* as to creditors, and not simply void as between the parties to the agreement.

▇ Pursuant to *Erie Railroad v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), in deciding issues founded upon state common law, federal courts should look to the decisions of the state's highest court. If the state's highest court has not spoken to the question in controversy, a federal court must discern how the state's highest court would respond if confronted with the question. *Hartford Fire Ins. v. Lawrence, Dykes, Goodenberger,* 740 F.2d 1362, 1365 (6th Cir.1984); *A & M Records, Inc. v. M.V.C. Dist. Corp.,* 574 F.2d 312, 314 (6th Cir.1978); *In re Stone,* 52 B.R. 305, 306 (Bankr.W.D.Ky.1985); *In re Sexton,* 16 B.R. 240, 242 (Bankr.D.Tenn. 1981). To date, no Ohio court appears to have addressed the issue of a rescinding partner's liability to third-party creditors.

Initially, the Court finds that the authorities previously cited as supporting the Plaintiff's position would be found persuasive by the Ohio Supreme Court. *See,* O.R.C. § 1775.03(D); 13 O.Jur.3d. *Business Relationships* § 927 at 45. However, if, as the Defendant appears to assert, only older common law cases can be considered in determining Mr. Thompson's liability to creditors as a fraudulently induced partner, his position must still be rejected. A review of older case law reflects that fraudulently induced partners have always been liable to creditors, and have not been able to avoid liability by electing to rescind. *See, Grossman v. Lewis,* 226 Mass. 163, 166–167, 115 N.E. 236, 238 (1917); *Ohio Well Supply Co. v. Metcalf,* 174 Mo.App. 555, 559, 160 S.W. 897, 898 (1913); *Perry v. Hale,* 143 Mass. 540, 542, 10 N.E. 174, 177 (1887); *Richards v. Todd,* 127 Mass. 167, 173 (1879); *Hynes v. Stewart & Owens,* 49 Ky. (10 B.Mon.) 429, 433 (1850); W. Wharton, *Story on Partnership* § 232 at 370–371 n. 1 (7th ed. 1881); C. Bates,[1] *The Law of Partnership* § 595 at 629 (1888); *see also,* W. Lindley, *Lindley on Partnership,*

---

1. Clement Bates was a member of the Cincinnati Bar and co-authored *Ohio Digest* (1875).

Book III, Ch. X, § 5(3) at 585 n. L (10th ed. 1935) (citing English cases holding a fraudulently induced partner is liable to all creditors of the firm.) Accordingly, the Defendant cannot avoid liability to creditors based on any right to rescind found in partnership law's common law history.

It should also be noted that the Defendant's right to rescind the partnership agreement is very questionable. As the *Hanes* court states: "Where the execution of an instrument is procured by fraud in the inducement or consideration, it is voidable, and may be rescinded *before the rights of third parties have intervened.*" *Hanes v. Giambrone*, 14 Ohio App.3d at 406, 471 N.E.2d at 808 (emphasis added). In the case at bar, the rights of third parties have intervened. Another obstacle to rescission is the futility of attempting to adjust the equities between the innocent partners. Edward P. Wolfram, Jr. is the only partner guilty of fraud. He is incarcerated and financially unable to indemnify the other partners against the debts of the partnership. With the large balance owed to creditors, it would appear to be a "vain act" for a state court to void the contract between the partners and attempt to place the Defendant in the position he would have been in if he had not entered into the partnership agreement.

■ Laches may also prevent rescission. To be entitled to rescission, the defrauded party must act promptly upon the discovery of the fraud. *Hanes v. Giambrone*, 14 Ohio App.3d at 405, 471 N.E.2d at 807; *see also*, 2 J. Barrett & E. Seago, *Partners and Partnerships Law and Taxation* Ch. 8, § 3.5 at 28 (1954); A. Bromberg, *Crane and Bromberg on Partnership* Ch. 8, § 85 at 488. Here, the Defendant did not file his Counterclaim for rescission until April 12, 1985, more than two (2) years after the discovery of Wolfram's fraud in February of 1983. *See, e.g., Zapffe v. McElroy*, 364 S.W.2d 299, 301 (Tex.Civ.App.1962) (Summary Judgment granted against defrauded partner seeking rescission more than two (2) years after discovery of the fraud). It is unclear what effect Mr. Thompson's Affidavit would have in this case. The Affidavit only deals with the discovery of the *timing* of the fraud. Moreover, the Seventh Defense and Counterclaim were filed prior to Mr. Thompson's knowledge of that timing.

■ Both parties have spent considerable effort discussing liability under an estoppel theory, and the need to prove that each creditor relied on the representation that Mr. Thompson was a partner in Bell & Beckwith. In light of the cases cited above, the estoppel theory is not necessary to the Trustee's case. Nevertheless, in the present case, there was an ongoing partnership with a certificate on file with the State of Ohio. Under these circumstances, no proof of reliance is required to hold an actual partner liable. *See, Van Andel v. Smith, supra; see also, In re Lamb*, 36 B.R. 184, 188 (E.D.Tenn.1983). The present case is distinguishable from *Montgomery Ward & Co. v. Barger*, 108 Ohio App. 67, 160 N.E.2d 554 (1958) where the plaintiff failed to prove that an actual partnership existed. Thus, if necessary, the Trustee could prevail under O.R.C. § 1775.15.

Adopting the Defendant's theories would simply encourage partners to collusively "defraud" each other into entering into the partnership agreement so that they might be protected from possible partnership losses. As the Securities Investor Protection Corporation has pointed out, promoting such a policy would be particularly inappropriate in the setting of the securities industry, where it is generally presumed, as a matter of law, that "customers" of a brokerage firm rely on the existence of adequate capitalization. *See, Scott v. Deweese*, 181 U.S. 202, 21 S.Ct. 585, 45 L.Ed. 822 (1901); *In re Weis Securities*, 605 F.2d 590 (2d Cir.1978).

In reaching these conclusions, the Court has considered all the evidence and arguments of counsel, regardless of whether or not they are specifically referred to in this Opinion.

Accordingly, the Defendant's Seventh Defense and Counterclaim being legally insufficient to avoid liability on the Trustee's

Complaint, and consequently unrelated to liquidation of Bell & Beckwith, it is

ORDERED that the Defendant's Seventh Defense be, and is hereby, Stricken.

It is FURTHER ORDERED that the Trustee's Motion for Summary Judgment on the Defendant's Counterclaim be, and is hereby, Granted.