HANES, APPELLEE, *v.* GIAMBRONE, APPELLANT, ET AL.

(No. 8379—Decided February 3, 1984.)

*Messrs. Hamrick, Weprin & Falknor* and *Mr. James I. Weprin,* for appellee.

*Messrs. Pickrel, Schaeffer & Ebeling* and *Mr. Frank M. Root,* for appellant.

BROGAN, P.J. On October 26, 1979, appellee, Russell Hanes, and Cheryl Medley, Mary Jo Hayes, and appellant, Letitia Giambrone, entered into a partnership agreement. The partnership was called "Paragon II Office Company." The purpose of the partnership was to acquire a certain parcel of real estate located in Centerville, Ohio, and to construct an office building thereon. Paragraph five of the partnership agreement provided that capital of the partnership shall be contributed as follows:

| | |
|---|---|
| Letitia Giambrone | $19,875 |
| Cheryl Medley | $39,750 |
| Mary Jo Hayes | $19,875 |
| Russell Hanes | $19,875 |

Paragraph five further provided that "no part of the capital contributions of the partners shall be withdrawn without the unanimous consent of the partners."

Paragraph nine provides:

"The net profits of the partnership from all sources whatsoever, shall be divided and the net losses of the partnership shall be borne equally among all of the partners."

On the same date as the partnership agreement was signed, the partnership acquired the parcel of real estate, and the partnership and the individual partners executed a note and mortgage securing a $60,000 loan from the North Central Mortgage Corporation. A down payment of $20,000 was paid to the mortgage company.

The $19,875 contributed by appellee consisted of three checks, as follows: May 21, 1979, payable to Swift Real Estate in the sum of $1600; September 6, 1979, payable to Swift Real Estate in the sum of $1900; and October 1, 1979, payable to Charles Fred Allbery, attorney for the partnership in the sum of $16,375.

It is undisputed that appellee, Russell Hanes, was the only one of the partners who paid the capital contribution as required by paragraph five of the agreement. The developer and promoter of the venture was G. Keith Medley. Because of previous financial problems, Medley and his wife serve as a partner, and, as his agent, her contribution was to be $39,750. This contribution was never made by the Medleys. Mary Jo Hayes was the secretary to Keith Medley and her contribution was not made to the partnership, but was deposited by Medley in his "builder account" at Winter's National Bank. Medley induced appellant Giambrone to enter into the partnership agreement because her "financial statement" would support the borrowing necessary to acquire the real estate and construct the office building. Medley induced Mrs. Giambrone's participation as a partner on the promise that he would make her contribution for her because he had

caused her to lose $20,000 in a sour business venture on a previous occasion.

There was no conversation between Hanes and Giambrone with respect to the Paragon II partnership prior to the closing on the real estate and their signing of the partnership agreement. Hanes testified he was not aware that Giambrone had not made the initial contribution until long after execution of the agreement. Hanes also testified he would not have entered into the partnership had he known that the other partners did not make their cash contributions to the partnership.

Keith Medley, in his deposition, testified that Frank Swift, a realtor, represented Hanes and was aware prior to October 26, 1979, that Mrs. Giambrone was not putting up any cash. Hanes' contribution was deposited in the trust account of the partnership's lawyer, Mr. Allbery. Medley then received distribution from the trust account without the unanimous consent of the other partners, as required by the partnership agreement.

Keith Medley testified that it was the understanding of the partners that no construction would be attempted during the winter of 1979-1980, but that in the spring of 1980 a construction loan would be obtained permitting construction to go forward. Additional financing in the amount of $450,000 was needed for construction, but a loan commitment became impossible when the prime interest rate jumped to twenty percent in early 1980.

On April 24, 1980, the North Central Mortgage Corporation notified the partnership and the individual partners that they were in default of payment on the note, that the entire balance was due and payable on the note, and that the entire balance was due and payable no later than May 15, 1980. On May 29, 1980, appellee Hanes brought an action in the Montgomery County Court of Common Pleas against appellant, Cheryl Medley and Mary Jo Hayes, alleging they fraudulently breached the partnership agreement by not making their respective capital contributions to the partnership to avoid sharing in any losses incurred by the partnership. Appellee sought monetary damages from appellant.

In the second count of the complaint, appellee asserted that G. Keith Medley expended partnership funds without partnership authorization. Appellee sought that the partnership be dissolved, that an accounting be had of the affairs of the partnership pursuant to R.C. 1775.21 and 1775.42, that a receiver be appointed, a rescission of the partnership agreement and compensatory and punitive damages.

North Central Mortgage Corporation was joined as a party defendant, but it was subsequently dismissed as a party when the subject mortgaged property was sold at foreclosure and the mortgage company indicated no intention of pursuing a deficiency judgment.

Appellant answered the complaint generally denying the allegations of the complaint. Specifically she denied any understanding that she would contribute $19,875 to the partnership. She alleged as a defense that appellee knew of the agreement by Keith Medley to contribute her share of the required contribution as stated in the partnership agreement. Appellant also asserted as a defense that the complaint failed to state a claim upon which relief could be granted. Appellant also cross-claimed for damages against Keith Medley for his failure to contribute the required contribution.

Appellee was granted a summary judgment against Cheryl and Keith Medley on the issue of liability. The matter was then referred by the trial court to a referee for a report on the remaining issues of fact and law. The referee found Keith Medley's actions in regard to appellee to be fraudulent and

awarded $10,000 in punitive damages in addition to compensatory damages in the amount of $19,875 plus interest. A default judgment was entered in appellee's favor against Mary Jo Hayes in the sum of $19,875 plus interest. The court also found in favor of appellee and against Cheryl Medley and appellant Letitia Giambrone in the amount of $19,875. The court found that all defendants were jointly and severally liable for the $19,875 amount, and, as such, found that appellant would be entitled to contribution from the other defendants in the event she paid more than her share of the judgment. Since the contribution of appellant had not yet occurred, the referee recommended that the cross-claim of appellant be dismissed without prejudice. The referee recommended that the partnership be dissolved.

Appellant was the only defendant to file objections to the referee's report. After those objections were filed and a hearing upon them held, the trial court modified the recommendations and as modified adopted the referee's report. Specifically, the trial court entered judgment for appellee in the amount of $19,875 against Keith Medley, Cheryl Medley, Letitia Giambrone and Mary Jo Hayes, jointly and severally, plus interest. Judgment was entered against Keith Medley for $10,000 in punitive damages. The cross-claim of appellant was dismissed without prejudice. The partnership was dissolved. Appellant has appealed asserting eight assignments of error.

## I

"The common pleas court erred in overruling appellant's motion to dismiss the complaint by reason of appellee's failure to make demand upon the Paragon II partnership to commence the action against appellant for her unpaid initial subscription to the partnership followed by refusal or inaction, prior to commencement of appellee's action, and in proceeding with appellee's claim without an accounting of the partnership."

## II

"The common pleas court erred in overruling appellant's motion to dismiss the complaint where the partnership entity was not named as a party plaintiff or defendant."

## III

"The common pleas court erred in applying Section 1775.38(C) Ohio Revised Code as a basis for recovery by appellee against appellant, although appellee asserted no fraud claims against appellant and in light of the specific finding that appellant committed no fraud in the transaction."

## IV

"The common pleas court erred in its ruling, that since at trial the Paragon II partnership was without assets there was no reason for application of the rules for settling accounts between partners pursuant to Section 1775.39, Ohio Revised Code."

## V

"The common pleas court erred in dissolving the partnership for the reason that no one other than appellee contributed to the partnership despite documentary and other evidence to the contrary."

## VI

"The common pleas court erred in holding that appellant conspired with defendant [sic] to breach the contract (Paragon II partnership agreement) such being inconsistent with findings that appellee did not assert fraud claims against appellant, nor did evidence support even by a mere preponderance the finding of scienter or fraud on the part of appellant."

## VII

"The judgment of the common pleas court is not sustained by the evidence and is against the manifest weight of the evidence."

## VIII

"The judgment of the common pleas court is contrary to law."

Appellant alleged that the trial court erred in finding in favor of the appellee because the appellee failed to make a demand on the partnership to commence action against appellant and proceeded with appellee's claim without an accounting of the partnership. As authority for this position, appellant relies on the unreported decision of *Hanes* v. *Allbery* (June 10, 1982), Montgomery App. No. CA-7637, unreported. In that case, Hanes filed suit against the partnership's attorney, Charles Allbery, which action was dismissed because the court determined that Allbery represented the partnership, but had not established an attorney-client relationship with Hanes. As such, that decision has no bearing on the present litigation before us.

R.C. 1775.20(A) provides for an accounting by a partner to the partnership. It provides:

"(A) Every partner must account to the partnership for any benefit and hold as trustee for it any profits derived by him without the consent of the other partners from any transaction connected with the formation, conduct, or liquidation of the partnership or from any use by him of its property."

R.C. 1775.21 provides for the right of a *partner* to a formal account:

"Any *partner* has the right to a formal account as to partnership affairs:

"(A) If he is wrongfully excluded from the partnership business or possession of its property by his partners;

"(B) If the right exists under the terms of any agreement;

"(C) As provided by section 1775.20 of the Revised Code;

"(D) Whenever other circumstances render it just and reasonable." (Emphasis added.)

The Uniform Partnership Law (R.C. Chapter 1775) does not require, as a condition precedent to a partner seeking an accounting, that the partner first make a demand that the partnership seek an accounting. Such a demand in this case would certainly have been fruitless as the other partners had likewise failed to make their capital contributions as mandated by the partnership agreement. Also the partnership could only act where at least a majority of the partners felt the accounting was required. See R.C. 1775.17(H). Such a majority was quite unlikely in light of the "activities" of the other partners. Nevertheless, a partner may seek an accounting of partnership affairs where "circumstances render it just" to do so. See R.C. 1775.21(D).

An accounting is also unnecessary where it would serve no useful purpose. The evidence reveals that the partnership assets had been dissipated by the actions of Keith Medley. While recognizing the general rule which prevents the maintenance of an action at law between partners in the absence of an accounting, many courts have held that an action can be maintained by one partner against another, even where the partnership transaction is the basis of the suit, if the facts are such that no complex accounting involving a variety of partnership transactions is necessary. See *Morgan* v. *Steinberg* (Tex. Civ. App. 1930), 23 S.W. 2d 527; 60 American Jurisprudence 2d (1972) 238, Partnerships, Section 352. And it has been held that where the dealings between two partners embrace but a few items, and there are no such transactions as to make a settlement difficult and all partnership affairs are settled except only an accounting between them, the claim of

one partner against the other for money is such a one as may be proceeded at law. *Zimmerman* v. *Lehr* (N.D. 1920), 176 N.W. 837. Accordingly, the first two assignments of error are overruled.

Appellee contends in his complaint that Letitia Giambrone fraudulently misrepresented her intention to pay her respective capital contribution into the partnership by execution of the agreement to appellee's detriment.

R.C. 1775.38 provides:

"Where a partnership contract is rescinded on the ground of the *fraud or misrepresentation* of one of the parties thereto, the party entitled to rescind is, without prejudice to any other right, entitled:

"(A) To a lien on, or right of retention of, the surplus of the partnership property after satisfying the partnership liabilities to third persons for any sum of money paid by him for the purchase of an interest in the partnership and for any capital or advances contributed by him;

"(B) To stand, after all liabilities to third persons have been satisfied, in the place of the creditors of the partnership for any payments made by him in respect of the partnership liabilities;

"(C) To be indemnified by the person guilty of the fraud *or making the representation* against all debts and liabilities of the partnership."

Where one is induced to form a partnership by reason of the fraud or misrepresentations of another, a court of equity will, on the application of the injured party and after the deceit becomes known, rescind the contract of partnership. *Oteri* v. *Scalzo* (1892), 145 U.S. 578. To be entitled to the remedy of rescission, the defrauded party must act promptly upon the discovery of the fraud. While the Uniform Partnership Act ("UPA") does not expressly authorize dissolution for fraud, it appears to assume the availability of this remedy by providing for certain conse-

quences when a partnership contract is rescinded on the ground of fraud. UPA Section 39; see R.C. 1775.38 and 60 American Jurisprudence 2d (1972) 119, Partnerships, Section 207. Dissolution may also be granted where a partner has been guilty of other fraud in the partnership affairs, as, for example, in failing to account. It is not essential that the misrepresentation be sufficient to afford grounds for an action in deceit, but it must be material. *Jefferies* v. *Jefferies* (Pa. 1956), 127 A. 2d 657. Additionally, to the extent that the Uniform Partnership Act does not provide otherwise, the rules of law and equity govern. R.C. 1775.04.

Fraud vitiates and avoids all human transactions, from the solemn judgment of a court to a private contract. It is a thing indefinable by any fixed and arbitrary definition. It is said that it is a part of the equity doctrine of fraud not to define it, lest the craft of men should find ways of committing fraud which might evade such a definition. In its most general sense, it embraces all acts, omissions or concealments which involve a breach of legal and equitable duty, trust or confidence justly reposed, which are injurious to another, or by which an undue and unconscientious advantage is taken of another. 1 Bouvier's Law Dictionary (1914) 1306. When once shown to exist, it poisons alike the contract of the citizen, the treaty of the diplomat, and the solemn judgment of the court. *New York Life Ins. Co.* v. *Nashville Trust Co.* (Tenn. 1956), 292 S.W. 2d 749.

Fraud may become important either for the purpose of giving the defrauded person a right to sue the fraudulent person for damages in an action of deceit, or its equivalent, *or* to enable the person to rescind the transaction. The requirements of the law for these two purposes are not always identical. 12 Williston on Contracts (3 Ed. 1970) 322, Section 1487.

It is undoubtedly true that wherever the circumstances are such as to warrant an action for deceit for inducing a person to enter into a contract, they will certainly warrant avoidance or rescission of the bargain. *Sellars* v. *Grant* (C.A. 5, 1952), 196 F. 2d 677. However, the converse is not true. There are cases where the belief of the deceived person is not due to such a consciously fraudulent misrepresentation as would justify an action of deceit, and yet there may be every reason why rescission should be allowed. Williston, *id.*, at 400, Section 1500.

The relation between partners is essentially one of mutual trust and confidence. The law imposes upon them the highest standard of integrity and good faith. *McGrath* v. *Cowen* (1898), 57 Ohio St. 385.

Fraud is classified as actual or constructive. *Stivens* v. *Summers* (1903), 68 Ohio St. 421. Actual fraud is the foundation of the action of deceit, is the ordinary legal sense of fraud, and, when applied to contracts, conveys the idea that the assent of one party has been procured by some trick or device. To constitute actual fraud it is necessary that the wrongdoer has an intent to do wrong, and does injury or damage in carrying such intent into execution. *Kuehner* v. *Johnson* (App. 1940), 33 Ohio Law Abs. 401.

Conduct may be fraudulent, though not perhaps in that sense which affixes the stain of moral turpitude on the mind of the party, but falling within the notion of legal fraud. *Parmlee* v. *Adolph* (1875), 28 Ohio St. 10. There may be fraud in law, legally deducted from certain acts, even though both parties were strictly honest and had no intention of fraud. Constructive fraud may arise from the circumstances of the transaction or the relationship of the parties, without the existence of fraudulent intent affecting the conscience. *Lake Hiawatha Park Assn.* v. *Knox County Agri. Soc.* (1927), 28 Ohio App. 289. Any inequitable conduct which is not accompanied by affirmative false representations is remediable under the classification of constructive fraud. Hence, constructive frauds are such as are assumed by the court to have been committed by acts without regard to motive. *Union Rolling Mill Co.* v. *Packard* (1885), 1 Ohio C.C. 76. They arise from some peculiar confidential relationship between the parties. Courts of equity may hold acts fraudulent although there is no intent to defraud. The fraud is the same in either case, the distinction being in the nature of the relief rather than in the character of the fraud. *J. B. Colt Co.* v. *Wasson* (1922), 15 Ohio App. 484.

"Constructive" fraud often exists where the parties to a contract have a special confidential or fiduciary relation which affords the power and means to one to take undue advantage of or exercise undue influence over another. Constructive fraud *does not require proof of fraudulent intent;* the law indulges in an assumption of fraud for the protection of valuable social interests based upon an enforced concept of confidence, both public and private. *Perlberg* v. *Perlberg* (1969), 18 Ohio St. 2d 55 [47 O.O.2d 167]. Where the execution of an instrument is procured by fraud in the inducement or consideration, it is voidable, and may be rescinded before the rights of third parties have intervened. 24 Ohio Jurisprudence 2d (1957) 631, Fraud and Deceit, Section 15. Fraud subjects a party to a liability for damages for the wrong, or it may vitiate the contract and enable the injured party to recover money paid upon it. 24 Ohio Jurisprudence 2d (1957) 633, Fraud and Deceit, Section 19.

It is the duty of a partner to observe and conform to the terms of the partnership agreement, and where there is no express contract of partnership he must conform to the terms of the implied agreement. Deviation may give other

partners the right to dissolve the partnership, and places upon the guilty partner the duty to indemnify for all loss occasioned by his breach.

The partner's right to indemnity arises from breach of the duty to conform to the partnership agreement. It is a right to recover for losses sustained by one partner through such breach by another. *Hulett* v. *Fairbanks* (1883), 40 Ohio St. 233. Unlike contribution, it springs from contract, and results, not in sharing a common obligation but in placing the *entire* burden upon the partner whose misconduct brought it about.

The UPA provides that when dissolution is caused in any way, except in contravention of the partnership agreement, each partner, as against his partners, may have the partnership property applied to pay in cash the net amount owing to the respective partners. R.C. 1775.37(A). Each innocent partner is entitled, in addition to the rights mentioned above, to damages for the breach of the agreement as against each partner who has caused the dissolution wrongfully. R.C. 1775.37(B)(1).

It is undisputed that appellant signed the partnership agreement indicating that she, not Keith Medley, would contribute $19,875 as her capital contribution. The trial court found the appellant never had any intention of making her capital contribution to the partnership. The fact that she had no fraudulent intent to deceive appellee by signing the agreement is wholly irrelevant, where appellee relied on her representation as a fellow partner and made his contribution as a consequence of that representation. The representation was false. Appellee was entitled to rescind the agreement (*i.e.*, partnership) and be restored to his status quo before the transaction. While appellant's ac-

tions would not render her liable in tort for damages, punitive or otherwise, her actions were a constructive fraud on appellee because of the fiduciary duty implicit in the business arrangement.

Appellant is incorrect in asserting that appellee did not assert a fraud claim. The trial court's finding that appellant committed no fraud must be read in context with its further findings that appellant conspired with Mr. Medley to breach the terms of the partnership agreement, *i.e.*, that she would not make the capital contribution as she represented. The facts are not in dispute that appellant and Medley concealed from appellee the fact that appellant was not going to make her contribution. The absence of scienter does not negate a finding of constructive fraud. There is no evidence that appellant knew that Medley would not make her contribution in a timely manner when the partnership account was opened and business was transacted. There is no evidence she meant to harm appellee. Her subjective intent may negate punitive damages being awarded, but her misrepresentation in the partnership agreement renders her liable for indemnification to the injured partner.

The trial court properly dissolved the partnership and granted appellee relief under R.C. 1775.38(C) and 1775.39. The judgment is not against the manifest weight of the evidence or contrary to law. The remaining assignments of error are accordingly overruled.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

KERNS and WILSON, JJ., concur.