## Wehagen, Inc.
## v.
## U.S.A. Management & Development Co.
### [Cite as 5 AOA 328]

Case No. 89-L-14-050
Lake County, (11th)
Decided July 13, 1990

B. Lawrence Allen, 4076 Erie Street, P.O. Box 470, Willoughby, Ohio 44094, for Plaintiff-Appellant/Cross-Appellee.

J. Melvin Andrews, 35475 Vine Street, Eastlake, Ohio 44094, for Defendants-Appellees/Cross-Appellants, U.S.A. Management & Devel. Co., Charles M. Andrews & Urban Cornacchione.

Thomas M. Carolin, 800 Baker Building, 1940 East Sixth Street, Cleveland, Ohio 44114, for Defendant-Appellee/Cross-Appellant, Willo Arms Limited.

FORD, J.

The facts of this case are essentially not in dispute.

Appellant/cross-appellee, Wehagen, Incorporated (Wehagen) was the owner of leasehold interest in a Sunoco gas station property, located at 36099 Euclid Avenue, in Willoughby, Ohio.

Under the terms of the lease, Wehagen was given a right of first refusal on any offer to purchase the property. This lease provision, paragraph 7(g), states:

"[I]n the event [appellee, cross-appellant Willo Arms Associates, Ltd. (Willo)] desires to sell the within demised premises or other property owned by [Willo] of which this is a part at any time during the term hereof *** and receives therefor [sic] a bona fide offer to purchase acceptable to [Willo], [Willo] shall notify [Wehagen] in writing of said offer to purchase, and [Wehagen] shall have the right to meet said bona fide offer by giving [Willo] notice in writing of its intention so to do within thirty (30) days after receipt of said offer in writing ***"

The Sunoco gas station property constituted a small portion of the original tract of land owned by the original fee owners, Frank and Mary Mavec. The evidence indicates that this particular tract of land was subdivided into eight separate parcels, with the Sunoco property being separated from an adjacent property, containing the Willo Medical Building, in 1980. The two parcels have remained separate and separately alienable ever since.

On August 10, 1983, Willo informed Wehagen, pursuant to the first refusal clause, of an offer by appellee/cross-appellant, U.S.A. Management and Development, Inc. (U.S.A.), to purchase the Sunoco gas station property, along with the adjacent medical building, for 1.36 million dollars. After consideration of the offer, Wehagen replied, through counsel, that it was obligated to meet purchase offers only for the separate Sunoco gas station property.

Willo's counsel replied to Wehagen, by letter, on September 14, 1983, stating:

"*** where the offer is conditioned upon *all* such property being conveyed, that the lease must meet 'said bona fide offer' in order to exercise its right of first refusal." (Pl. Exhibit 10, Emphasis in original.)

On September 23, 1983, after concluding Wehagen's right to first refusal had expired unexercised, Willo sold the Sunoco property and the medical building. However, the consummated sales transactions between Willo and U.S.A. differed substantially from the sales transaction described to Wehagen. Rather than selling both the Sunoco gas station property and the medical building to U.S.A., Willo entered into the following transactions:

a land contract between Willo and U.S.A. to purchase the medical building for 1.3 million dollars and a real estate purchase agreement between Willo and Charles Andrews (an attorney in this case) and Urban Cornacchione (the principle stockholders of U.S.A.) to purchase the Sunoco property for $60,000. The record indicates that the fair market value of the Sunoco property, in 1983, was approximately $200,000.

The record further reflects that Willo never informed Wehagen that a separate offer was made on the Sunoco parcel by Andrews and Cornacchione until after suit was filed in this case, despite the fact that Willo, U.S.A., Andrews, and Cornacchione were aware of the first refusal contract right.

Wehagen did make a separate request that Willo segregate the properties to allow it to exercise its rights under the leasehold agreement. Following Willo's denial of this request and the ultimate sale of the properties, Wehagen filed suit, in a declaratory judgment action, commenced on October 21, 1983.

The case was initially heard on December 16, 1985. In the August 19, 1986 judgment entry, the trial court denied equitable relief to Wehagen and limited recovery, if any, to damages not yet determined. The court did determine that Willo failed to comply with the right of first refusal, contained in paragraph 7(g) of the lease agreement.

Willo and Wehagen appealed to this court. However, in this court's February 22, 1988 opinion, this court dismissed the actions for lack of a final appealable order. This author, in dissent, stated that he felt that a final appealable order was present in this case. Further, after providing a detailed examination of the facts contained in the record, the dissent concluded that the trial court erred in failing to grant specific performance of the right of first refusal to Wehagen.

On remand, the trial court, limiting review of the case to original trial testimony and all filed briefs, vacated its interlocutory judgment and substantially conformed its opinion to the dissent. The trial court held that specific performance of the right of first refusal should be granted to Wehagen because of the constructive fraud of Willo, U.S.A., and Andrews and Cornacchione. This constructive fraud was sufficient to permit rescission of the prior deed transfer of the Sunoco property. *Fehrman v. Ellison* (1971), 32 Ohio App. 2d 258. However, rather than permit Wehagen to purchase the Sunoco

property for a price of $60,000, the court stated that Wehagen would be permitted to purchase the land for the fair market value of $200,000.

Wehagen now timely appeals the trial court's ruling that stated that the purchase price of the property be $200,000. Willo and U.S.A. have also filed various cross-appeals.

Wehagen's assignment of error states:

"The trial court erred in failing to grant the appellant its right of refusal at the sale price of sixty thousand dollars ($60,000.00)."

Willo, in its cross-assignments of error, states:

"1. The court below erred to the prejudice of defendants, cross-appellants, Charles M. Andrews, Urban Cornacchione, and U.S.A. Management and Development Corporation in finding said cross-appellants engaged in unconscionable conduct that constitutes constructive fraud.

"2. The court below erred to the prejudice of defendants, cross-appellants, Charles M. Andrews, Urban Cornacchione and U.S.A. Management and Development in granting contract rescission and ordering specific performance in lieu of damages."

U.S.A., Charles M. Andrews, and Urban Cornacchione, in their joint cross-assignments of error, state:

"1. The court below erred to the prejudice of defendant, cross-appellant Willo Arms Associates, Ltd. in holding that said Willo Arms breached plaintiff Wehagen's right of first refusal (Opinion and Judgment Entry, 3/24/89).

"2. The court erred to the prejudice of defendant, cross-appellant Willo Arms Associates, Ltd., in finding Willo Arms engaged in unconscionable conduct constituting constructive fraud (Opinion & Judgment Entry, 3/24/89)."

While this morass of assignments may, at first, resemble the Gordian knot, discussion of the various issues can be simplified through joint temporal analysis of the issues. The nature of the legal argument raised by appellant, in its assignment of error, and those raised by cross-appellants, in their cross-assignments of error, are substantially intertwined so that these arguments will be construed concurrently. Appellant's assignment, addressing the consideration required to exercise the right of first refusal, will be addressed separately.

In the first area of discussion, Willo, U.S.A., Andrews and Cornaccione (the cross-appellants) assert that the trial court erred in finding that they engaged in unconscionable conduct consti-

tuting constructive fraud. Instead, they contend that the trial court ignored the plain, unambiguous language of the lease and, in fact, rewrote the lease, in order to create additional obligations, which stated that Willo was "*** bound under Wehagen's first refusal right to ascertain a bona fide segregated sale price for presentment ***. " In allegedly rewriting the lease agreement, cross-appellants maintain the trial court committed an error of law. *Herder v. Herder* (1972), 32 Ohio App. 2d 75.

Moreover, cross-appellants argue that the trial court misapplied the test for the imputation of constructive fraud. The correct definition, they maintain, would limit findings of constructive fraud to scenarios in which a fiduciary duty is involved.

The test for determining whether constructive fraud exists is as follows:

"Constructive fraud is defined as an act done or omitted which amounts to positive fraud, or is construed as a fraud by the court because of its detrimental effect upon public interests and public or private confidence, even though the act is not done or omitted with an actual design to perpetrate positive fraud or injury upon other persons. Constructive fraud, sometimes called legal fraud, is nevertheless fraud, although it rests upon presumption ***. It is presumed from the relation of the parties to a transaction or from the circumstances under which it takes place. ***. It requires neither actual dishonesty nor intent to deceive, being a breach of legal or equitable duty which, irrespective of the moral guilt or the wrongdoer, the law declares fraudulent ***. Hence, the terms 'constructive fraud' and 'legal fraud' both connote that in certain circumstances one may be charged with the consequences of his words and acts, as though he has spoken or acted fraudulently, although properly speaking, his conduct does not merit this opprobrium." 37 American Jurisprudence 2d (1968) 23, Fraud and Deceit, Section 4.

Moreover, as this court stated in *Ruple v. Alumna Products Co.* (Nov. 7, 1986), Lake App. No. 11-138, unreported, at 7:

"[Constructive frauds arise], as some general American authorities indicate, from some peculiar confidential relations between parties. In this class of cases there is often to be found some intermixture of deceit, overreaching, unconscionable advantage, or other mark of direct and positive fraud. 50 Ohio Jurisprudence 3d (1984), 357-58, Fraud and Deceit, Section 7.

While cross-appellants are correct in their observation that cases in which constructive fraud is found often rest on a confidential or fiduciary relationship, the existence of such a relationship is by no means determinative. Instead,

"[t]here may be fraud in law legally deducted from certain acts, even though both parties were strictly honest and had no intention of fraud. Constructive fraud may arise from the circumstances of the transaction or the relationship of the parties, without the existence of fraudulent intent affecting the conscience. *Lake Hiawatha Park Assn v. Knox County Agri. Soc.* (1927), 28 Ohio App. 289. "*Hanes v. Giambrone* (1984), 14 Ohio App. 3d 400, 406.

An example of constructive fraud arising out of the circumstances of the case or relationships of the parties can be found, in this district 's jurisprudence, in *Ruple, supra*. In *Ruple*, the defendant-appellant was found to have perpetrated an act of constructive fraud against some of his former co-businessmen by inserting a general release without telling the other signatories.

"For appellant to unilaterally insert a clause as important as a general release into the document his former co-businessmen were signing and not to say anything about it seems, at the very least, misleading, especially in light of appellee Ruple's testimony that he and appellant had discussed a release to the extent of $65,000. While actual fraud is difficult to find in the case at bar, we find that at least constructive fraud was prevalent in the case." *Ruple, supra,* at 12.

In *Ruple*, as in the case *sub judice*, there is no allegation that a confidential relationship existed between the contracting parties.

Close examination of the record in this case indicates that the behavior of the cross-appellants is unconscionable conduct which, as the trial court noted, constitutes constructive fraud. The facts indicate that Wehagen contracted for the right to meet all *bona fide* purchase offers of the Sunoco property. Rather than being presented with such an offer, cross-appellants instead submitted only an offer which packaged the Sunoco property with the medical building, an offer which, in fact, was not even the offer ultimately accepted by cross-appellants. Further, cross-appellants refused to segregate the Sunoco property in the transaction and allow Wehagen to purchase that property alone. (Such an action is clearly a permissible request by the option holder. See, *e.g., Whyhopen v. Via* (Fla., 1981), 404 So. 2d 851; *Myers v. Lovetinsky* (Iowa, 1971)

189 N.W. 2d 571; Annotation, Option to Purchase Real Property as Affected by Optioner's Receipt of Offer For, Or Sale Of, Larger Tract Which Includes the Optioned Parcel (1984), 34 A.L.R. 4th 1217.)

Although Wehagen was not given the opportunity to purchase the segregated Sunoco parcel, Andrews and Cornacchione purchased the property for $60,000. This price is considerably less than the fair market value of the property, which is $200,000. Had Wehagen been afforded the opportunity to purchase the property at $60,000 (or even, presumably, at $200,000), it would presumably have done so. Instead, Wehagen was informed that the only way it could obtain the property it wanted was to purchase it in conjunction with another property for a price nearly seven-fold higher than the desired property was worth.

As the trial court correctly noted:

"Wehagen was not obligated to meet a *bona fide* purchase offer just because it included the Sunoco parcel. The structure of the sale as between Willo Arms and U.S.A. mattered not to Wehagen, for its obligations were governed by paragraph 7(g) of the assigned lease. Once Willo Arms decided to sell the Sunoco parcel, it was bound under Wehagen's first refusal right to ascertain a *bona fide* segregated sale price for presentment. Defendant's reliance upon a combined price/single purchaser argument is not only specious but contradicted by facts and logic. Deeds filed with the Lake County Recorder substantiate two separate transactions involving separate purchasers. U.S.A. purchased the W-M parcel whereas Andrews and Cornacchione purchased the Sunoco parcel. (Tr. ct. entry at 2. Emphasis in original.)"

In short, cross-appellants were engaged in a financing shell game which, in essence, deprived Wehagen of its contractual right to first refusal. Such action, as previously noted, has "an undercurrent of deceit." Consequently, cross-appellant's arguments relating to the findings of constructive fraud are without merit.

Cross-appellants further argue that the trial court erred in making its finding that specific performance was the proper remedy in the case *sub judice.* These arguments are premised on the alleged lack of constructive fraud hypothesized by cross-appellants, which has been previously discussed. As *Fehrman v. Ellison, supra,* indicates, the remedy of rescission of the original deed and award of specific performance to the aggrieved party is proper in cases in which a finding of constructive fraud is made. Therefore, cross-appellants' arguments are without merit.

The final issue to be resolved in this case is that raised by the appellant, Wehagen, in its assignment of error. Wehagen argues that it should be permitted to purchase the Sunoco property for the price obtained by Andrews and Cornacchione, which was $60,000. The trial court disagreed, choosing instead to use the fair market value of the property, at $200,000.

Willo also argues that the price of the property, should Wehagen be found entitled to it, should be $200,000. Willo's arguments as well as counter-arguments made by all parties in this case, demonstrate a marked lack of cognizance of App. R. 16 and this court's local rule VII which require the parties to utilize the assignments of error propounded by the appellant in answer briefs. The creativity with which cross-appellants have created their own version of appellant's assignment of error, and appellant has replied to cross-appellants' assignments, is matched only by the difficulty that anyone reading them would have in determining which of the appellant's or cross-appellants' arguments were allegedly being rebutted by the appellant's or cross-appellants' counter-arguments. The appellate rules state that this court may strike portions of briefs which do not comply with the rules, as well as dismiss appeals altogether, sanctions which cross-appellants would do well to keep in mind should they continue to submit similar styled briefs.

When addressing arguments propounded by Willo, as well as the other cross-appellants in reply to Wehagen's request to purchase the property at $60,000, one is struck by the constant references to equity. "It would be inequitable" cross-appellants maintain, "to permit Wehagen to buy the property at such a devalued price. " In attempting to utilize equity's recourse, cross-appellants have apparently forgotten the maxim which states that equity will not help those with unclean hands. Having practiced constructive fraud on Wehagen, cross-appellants are scarcely in a position to complain that the price they set for the property is too low.

However, the trial court noted that "Wehagen shall be afforded its full thirty (30) day right of first refusal at the price of $200,000, the actual segregated price for this parcel (negotiated by the parties) as shown by the evidence." Given the existence in the record of the trial court's finding indicating that the parties negotiated about a segregated sales price of $200,000 for the

Sunoco property, this court will not disturb the trial court's findings, regardless of how much the cross-appellants' behavior merits such action.

Therefore, for the reasons set forth in this opinion, the judgment of the trial court is affirmed as to all assignments of error, whether set forth by the appellant or by the cross-appellants.

*Judgment affirmed.*

CHRISTLEY, P.J., and DONOFRIO, J., concur.

DONOFRIO, J., Seventh Appellate District, sitting by assignment.