[Cite as *D&H Autobath v. PJCS Properties I, Inc.*, 2012-Ohio-5845.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

FAYETTE COUNTY


| | | |
|---|---|---|
| D&H AUTOBATH, LLC, et al., | : | |
| Plaintiffs-Appellants | : | CASE NO.  CA2012-05-018 |
| | : | O P I N I O N |
| - vs - | | 12/10/2012 |
| | : | |
| PJCS PROPERTIES I, INC., et al., | : | |
| Defendants-Appellees. | : | |


CIVIL APPEAL FROM FAYETTE COUNTY COURT OF COMMON PLEAS
Case No. 10CVH00156


Michael J. Anthony and Vincent P. Zuccaro, 383 North Front Street, LL, Columbus, Ohio 43215, for plaintiffs-appellants

Joshua R. Bills, 10 West Broad Street, Suite 400, Columbus, Ohio 43215, for defendants, PJCS Properties 1, Inc. and Courtney Jenkins

J. Phillip Jensen, 7440 Stanley Mill Drive, Centerville, Ohio 45459, defendant-appellee, pro se

Stephen M. Spicer, 621 Watervliet Avenue, Dayton, Ohio 45420, defendant-appellee, pro se

Consultax, Inc., 621 Watervliet Avenue, Dayton, Ohio 45420, defendant-appellee, pro se

Frost Brown Todd LLC, Bonnie L. Wolf, 10 West Broad Street, Suite 2300, Columbus, Ohio 43215, for defendant-appellee, Gerard Chadwick

Frost Brown Todd LLC, Douglas R. Dennis, 2200 PNC Center, 201 East Fifth Street, Cincinnati, Ohio 45202, for defendant-appellee, Gerard Chadwick

**S. POWELL, P.J.**

{¶ 1} Plaintiffs-appellants, D&H Autobath, LLC, Janie E. Harris, and Angela and Rodney Dalton, appeal the decision of the Fayette County Court of Common Pleas granting summary judgment in favor of defendants-appellees, Stephen M. Spicer, Consultax, Inc., and Gerard T. Chadwick.

{¶ 2} In the summer of 2007, negotiations began between appellants and PJCS Properties I, LLC ("PJCS") for appellants to purchase one of three car wash businesses owned by PJCS (the "Business").[1] Offers to purchase were submitted by appellants to PJCS in May and again in September 2007. Around this time, Chadwick became involved in the transaction, acting as broker for PJCS in the sale of the Business.[2]

{¶ 3} In December 2007, prior to appellant's purchase of the Business, Chadwick and PJCS went over the financial records, including the profit and loss statements and tax returns of all three car wash businesses owned by PJCS. Chadwick created a spreadsheet calculating the differences between the combined totals of the profit and loss statements against the tax returns. According to Chadwick's spreadsheet, in 2005, the profit and loss statements indicated a gross revenue of $463,901 for the car washes while the tax return showed a gross revenue of only $361,942. The profit and loss statements also indicated a net profit of $205,409 for 2005 while the tax returns showed a net loss of $105,355. For 2006, the profit and loss statements indicated a net profit of $328,691 while the tax return showed a net loss of $55,014. Due to these discrepancies, Chadwick wrote to the principals of PJCS, J. Phillip Jensen and Cortney Jenkins, asking if he was "missing

---

1. At the time of this transaction, PJCS owned and operated three car washes in Ohio located on Leesburg Avenue, Linden Avenue, and Minute Lane. The car wash at issue in this case is located on Leesburg, in Washington Court House.

2. Both Sunbelt Business Advisors, a company owned by Chadwick, and Allen Beck also acted as brokers during the sale of the Business but are not parties to this appeal.

something." Jensen responded, explaining that the three car washes had "alot [sic] of cash sales that previously went unreported" and that Jensen and Jenkins were "trying to clean up [their] books during a couple of years where [they] didn't fully report [their] sales."

{¶ 4} Chadwick then sent an email to Jensen stating that PJCS needed to acquire a letter from a CPA attesting to the accuracy of the profit and loss statements for the Business, as well as profit and loss statements for all three car washes which added up to the tax returns. Approximately one hour after this email was sent, Spicer, as owner of Consultax and the former accountant for PJCS, certified the financial records. According to appellants, Spicer knew that the financial records he certified did not match the records Consultax had on file for PJCS. Specifically, the records produced by PJCS showed the Business earning a net profit of $123,648 in 2004, $125,388 in 2005, and $134,738 in 2006. However, the financial records maintained by Consultax and Spicer showed a net loss for the Business of $147,763.83 in 2004, a net loss of $31,415.75 in 2005, and a net profit of $78,755.60 in 2006. Nevertheless, Spicer verified the financial records provided by PJCS after speaking with Jensen and doing some online research on car washes that satisfied his concerns.

{¶ 5} In January 2008, Chadwick again spoke with Jensen regarding discrepancies between the profit and loss statements of the Business with the 2004 and 2006 tax returns. Chadwick questioned Jensen, "are the numbers just being changed or is there some explanation that goes with the differences?" In response, Jensen cited "bookkeeper oversite [sic]" for the problem and assured Chadwick that Spicer was "willing to accept the changes and certify the revisions."

{¶ 6} In April 2008, appellants began to grow uneasy regarding the length of time it required PJCS to provide profit and loss statements each time one was requested. Consequently, Angela Dalton contacted Chadwick, stating that the delay in receiving the profit and loss statements made her a "little nervous," as if PJCS was "trying to make

something up." Chadwick responded that Jensen and Jenkins wanted appellants to "succeed" and would do "what they can do assist" appellants. Chadwick further assured Angela Dalton in May 2008 that there was "nothing that [he was] aware of to worry about."

{¶ 7} On February 2, 2008, appellants and PJCS signed an Agreement to Purchase document. The purchase agreement included provisions relating to the sale of the Business as well as a provision regarding the role of the broker. Specifically as to the role of the broker, the purchase agreement stated:

**Brokers**

> Seller agrees to pay herewith a sales commission to the Broker as set forth in the commission agreement. The Broker does not make any warranty, express or implied, as to the condition of the equipment or inventory transferred pursuant to this Agreement, to its merchantability, to the value of the business transferred herein, the volume of the business experienced by the Seller or expected by the Purchaser, the accuracy of any records provided by the Seller or the existence or transferability of any business or professional license, nor does the Broker represent that the form or substance of this transaction is beneficial to either Purchaser or Seller under the Federal or State tax laws or Regulations. The Broker has not inspected the Purchase Assets or the title to said Purchased Assets conveyed by Seller and makes no representation as to the status of Seller's title, if any, to the Purchased Assets transferred herein.

The purchase agreement also included an integration clause stating that the purchase agreement "constitutes the entire agreement between the parties." Each appellant, as well as Jensen and Jenkins, signed the purchase agreement and, on May 21, 2008, appellants purchased the Business from PJCS for $974,000.

{¶ 8} On April 14, 2010, appellants filed suit against PJCS, Jensen, Jenkins, Chadwick, Spicer, and Consultax. The complaint alleged claims of fraud, breach of contract, breach of fiduciary duty, and negligence all relating to the production, compilation, and distribution of allegedly fraudulent financial records. Appellants claimed that these fraudulent financial records, provided by PJCS and Chadwick, and verified by Spicer and Consultax,

induced appellants into purchasing the Business. Had appellants known the real financials of the Business, they state that they would not have purchased it.

{¶ 9} On March 4, 2011, Spicer and Consultax, as well as Chadwick, moved for summary judgment in two separate, but nearly identical, motions. On August 16, 2011, the trial court granted summary judgment in favor of Chadwick, Spicer, and Consultax and dismissed the lawsuit against those parties. Appellants' claims against PJCS, Jensen, and Jenkins remained, but were later voluntarily dismissed by appellants.[3] Appellants now timely appeal their claims as to Chadwick, Spicer, and Consultax, raising two assignments of error.

{¶ 10} Under both assignments of error, appellants claim the trial court improperly granted summary judgment. This court reviews a trial court's decision on summary judgment under a de novo standard of review. *Harold v. Nationwide Mut. Ins. Co.*, 12th Dist. No. CA2007-01-013, 2008-Ohio-347, ¶ 11. Summary judgment is proper when: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can only come to a conclusion adverse to the party against whom the motion is made, construing the evidence most strongly in that party's favor. Civ.R. 56(C). The party requesting summary judgment bears the initial burden of informing the court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact as to the essential elements of the nonmoving party's claims. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). Once a party moving for summary judgment has satisfied its initial burden, the nonmoving party has the reciprocal burden to set forth specific facts showing that genuine issues remain. *Id.*; Civ.R. 56(E). Summary judgment is proper if the party opposing the motion fails to set forth such facts. *Id.*

{¶ 11} Assignment of Error No. 1:

---

3. The claims against Jenkins had been stayed prior to dismissal due to Jenkins filing bankruptcy.

{¶ 12} THE TRIAL COURT ERRED IN DISMISSING [APPELLANTS'] CLAIMS AGAINST CHADWICK.

{¶ 13} In their first assignment of error, appellants argue the trial court erred in granting summary judgment to Chadwick on their claims of fraud, intentional misrepresentation, constructive fraud, and breach of a fiduciary duty.[4] Specifically, appellants contend Chadwick knew that PJCS was intentionally misrepresenting its financial records and that the Business was losing money. Yet, Chadwick helped "orchestrate a scheme" to defraud appellants and induce them into purchasing the Business. If not for Chadwick's numerous material misrepresentations and omissions, appellants would not have entered into the purchase agreement with PJCS.

{¶ 14} Appellants further argue that, throughout the purchasing process, Chadwick acted as a trusted advisor to appellants. By acting in such a manner, appellants contend that a fiduciary relationship developed between themselves and Chadwick which Chadwick breached by recommending appellants enter into the purchase agreement with PJCS. We shall address each of appellants' arguments in turn.

## Intentional Misrepresentation and Fraud

{¶ 15} Appellants first argue that the trial court erred in determining that the parol evidence rule applies in this case to prohibit the introduction of parol and extrinsic evidence regarding Chadwick's material misrepresentations and omissions. Chadwick counters that the trial court correctly determined that the parol evidence rule applies because the alleged misrepresentations and omissions are directly contradicted by the language of the purchase agreement.

---

4. Appellants also brought claims against Chadwick for unjust enrichment, promissory estoppel, and violation of R.C. 4735.02. However, appellants fail to address these claims in their brief. As such, we shall not address these claims in our decision, as no evidence has been presented that these claims were dismissed in error.

{¶ 16} The elements of an action in fraud under Ohio law are: (1) a false representation concerning a fact, (2) knowledge of the falsity of the representation or utter disregard for its truthfulness, (3) intent to induce reliance upon the representation, (4) justifiable reliance upon the representation, and (5) injury proximately caused by the reliance. *Crown Property Dev., Inc. v. Omega Oil Co.*, 113 Ohio App.3d 647, 656 (12th Dist.1996); *Gaines v. Preterm-Cleveland, Inc.*, 33 Ohio St.3d 54, 55 (1987). To avoid summary judgment in this case, appellants were required to "set forth specific facts showing that there is a genuine issue for trial" as to whether appellants suffered damages caused by their justifiable reliance on Chadwick's allegedly intentional misrepresentations or omissions regarding the financial stability of the Business. *Four-O Corp. v. Mike's Trucking, Ltd.*, 12th Dist. Nos. CA2007-01-002, CA2007-01-003, 2007-Ohio-5628, ¶ 25; Civ. R. 56(E); *Haddon View Invest. Co. v. Coopers & Lybrand*, 70 Ohio St.2d 154 (1982).

{¶ 17} "The parol evidence rule states that, 'absent fraud, mistake or other invalidating cause, the parties' final written integration of their agreement may not be varied, contradicted or supplemented by evidence of prior or contemporaneous oral agreements, or prior written agreements.'" *Galmish v. Cicchini*, 90 Ohio St.3d 22, 27 (2000), quoting 11 Williston on Contracts (4 Ed.1999) 569-570, Section 33:4. "The parol evidence rule is a rule of substantive law that prohibits a party who has entered into a written contract from contradicting the terms of the contract with evidence of alleged or actual agreements." *Provident Bank v. Adriatic, Inc.*, 12th Dist. No. CA2004-12-108, 2005-Ohio-5574, ¶ 17, citing *Ed Schory & Sons, Inc. v. Society Nat'l. Bank*, 75 Ohio St.3d 433, 440, 1996-Ohio-194.

{¶ 18} "Nevertheless, the parol evidence rule does not prohibit a party from introducing parol or extrinsic evidence for the purpose of proving fraudulent inducement." *Galmish* at 28, citing *Drew v. Christopher Constr. Co., Inc.*, 140 Ohio St. 1 (1942), paragraph two of the syllabus. However, "the parol evidence rule may not be avoided by a fraudulent inducement

claim which alleges that the inducement to sign the writing was a promise, the terms of which are directly contradicted by the signed writing." *Id.* at 29; *see also Board of Trustees of Union Twp. v. Planned Development Co. of Ohio*, 12th Dist. No. CA2000-06-109, 2000 WL 1818540, *8. Accordingly, "an oral agreement cannot be enforced in preference to a signed writing which pertains to exactly the same subject matter, yet has different terms." *Id.*, citing *Marion Production Credit Ass'n. v. Cochran*, 40 Ohio St.3d 265, 274 (1988).

{¶ 19} In other words:

> While it is true that a party may not commit fraud in securing a written agreement, then hide behind the protection of the parol evidence rule, fraudulent inducement or misrepresentation claims that merely allege a prior statement or agreement that is different from that which is contained in the written contract do not suffice to overcome the parol evidence rule.

*Adriatic* at ¶ 18, citing *Shory* at 440. "Thus, parol evidence can only be introduced to challenge a written contract when the alleged oral misrepresentations are *consistent* with the written contract." *Westwinds Dev. Corp. v. Outcalt*, 11th Dist. No. 2008-G-2863, 2009-Ohio-2948, ¶ 58.

{¶ 20} We find this case similar to the First Appellate District's case of *Citicasters Co. v. Bricker & Eckler, LLC*, 149 Ohio App.3d 705 (1st Dist.2002). In *Citicasters*, the buyer entered into negotiations to buy a radio station from seller, who was represented by a law firm in the negotiations. *Id.* at ¶ 2. Buyer and seller entered into a purchase agreement, but, ultimately, the parties were unable to consummate the sale of the station. *Id.* at ¶ 2-3. The buyer then filed suit against the law firm, alleging that it had misrepresented the financial status of the radio station. *Id.* at ¶ 3. Specifically, the buyer alleged that the law firm had misrepresented the amount of money necessary to obtain a release of liens on the radio station as well as the radio station's financial ability to secure the release of the liens. *Id.*

{¶ 21} During the course of the lawsuit, the trial court granted the law firm's motion for

judgment on the pleadings based upon the parol evidence rule. *Id.* at ¶ 4. On appeal, the First Appellate District determined that the alleged misrepresentations of the law firm regarding the financial status of the radio station were within the scope of the purchase agreement, as the purchase agreement between the buyer and seller made the release of the liens a condition of closing. *Id.* at ¶ 13. The alleged misrepresentations of the law firm regarding the amount of money necessary to obtain the release and the radio station's ability to secure the release were not part of the purchase agreement, but were "squarely within the scope of the written contract." *Id.* In so holding, the court stated that "[t]he substance of the alleged oral promise is part and parcel of the subject matter contained in the integrated agreements * * *." *Id.* at ¶ 11, quoting *Bollinger, Inc. v. Mayerson*, 116 Ohio App.3d 702, 713 (1st Dist.1996).

{¶ 22} The issue was also similarly addressed by the Eleventh Appellate District in *Westwinds Development Corp. v. Outcalt*, 11th Dist. No. 2008-G-2863, 2009-Ohio-2948. In *Outcalt*, the buyers and seller entered into a purchase agreement for the sale of a lot in a residential subdivision. *Id.* at ¶ 2. The purchase agreement recited that it was the parties' intent that the buyers would contract with the seller's builder to build a residence on the lot. *Id.* at ¶ 3. After the closing of the purchase agreement between the buyers and seller, negotiations between the buyers and builder failed. *Id.* at ¶ 6. In addition, the relationship between the buyers and seller began to deteriorate and, eventually, the seller brought a suit against the buyers arguing, inter alia, fraud. *Id.* at ¶ 7. The trial court granted the buyers' motion for judgment on the pleadings soon after. *Id.* at ¶ 9.

{¶ 23} On appeal, the Eleventh District determined that the parol evidence rule prohibited the admittance of parol or extrinsic evidence because the alleged misrepresentations by the buyers that they would allow the builder to construct a residence on the lot was contrasted by the language in the purchase agreement which "merely

obligated the buyers to negotiate a construction contract with the builder 'prior to closing.'" *Id.* at ¶ 59. Thus, under the parol evidence rule, the Eleventh District determined that "evidence of the buyers' alleged misrepresentations would not be admissible to vary the terms of the purchase agreement." *Id.*

**{¶ 24}** In the case at hand, appellants assert that Chadwick made material misrepresentations and omissions regarding the financial state of the Business and the accuracy of the financial records provided to appellants in relation to the Business. Specifically, appellants contend that Chadwick provided financial documents which he alleged to be accurate and made representations that Jenkins and Jensen wanted appellants to succeed and would do what they could to assist appellants, as well as misrepresentations that the "problem" with the sales figures being "off" had "been fixed."

**{¶ 25}** However, the purchase agreement between appellants and PJCS explicitly provides that Chadwick makes "no warranty, express or implied," as to the "value of the business transferred herein" or the "accuracy of any records provided by [PJCS]." The purchase agreement goes on to state that Chadwick does not "represent that the form or substance of this transaction is beneficial to either [appellants] or [PJCS]."

**{¶ 26}** As appellants agreed in the purchase agreement that Chadwick made no representations as to the value of the business they were purchasing, and no warranties as to the accuracy of the information he provided, appellants cannot now argue that Chadwick made misrepresentations and omissions which directly contradict that provision of the purchase agreement. *Galmish*, 90 Ohio St.3d at 29. Thus, under the parol evidence rule, evidence of Chadwick's alleged misrepresentations and omissions would not be admissible to vary the terms of the purchase agreement. Consequently, no genuine issues of material fact exist and the trial court did not err in granting summary judgment to Chadwick.

**Breach of Fiduciary Duty and Constructive Fraud**

{¶ 27} Appellants next contend that the trial court erred in granting summary judgment in favor of Chadwick on their claims of breach of fiduciary duty and constructive fraud. Specifically, appellants argue that Chadwick formed a special and distinct business relationship with appellants and, especially, Angela Dalton that ultimately created a fiduciary relationship between appellants and Chadwick. Appellants further contend Chadwick breached this fiduciary duty when he provided them fraudulent financial records.

{¶ 28} "To succeed on a claim for breach of fiduciary duty, a party must show: (1) the existence of a duty arising from a fiduciary relationship; (2) a failure to observe the duty; and (3) an injury resulting proximately therefrom." *Fairbanks Mobile Wash, Inc. v. Hubbel*, 12th Dist. Nos. 2007-05-062, 2007-05-068, 2009-Ohio-558, ¶ 83, quoting *Estate Planning Legal Services, P.C. v. Cox*, 12th Dist. Nos. CA2006-11-140, CA2006-12-141, 2008-Ohio-2258, ¶ 44; *Strock v. Presnell*, 38 Ohio St.3d 207, 217 (1988). "'A 'fiduciary relationship' is one in which special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust.'" *Stone v. Davis*, 66 Ohio St.2d 74, 79 (1981), citing *In re Termination of Employment*, 40 Ohio St.2d 107, 115 (1974). The term 'fiduciary' is defined as "a person having a duty, created by his undertaking, to act primarily for the benefit of another in matters connected with his undertaking." *Groob v. Key Bank*, 108 Ohio St.3d 348, 2006-Ohio-1189, ¶ 16; *Strock* at 216. "A fiduciary relationship need not be created by contract; it may arise out of an informal relationship where both parties understand that a special trust or confidence has been reposed." *Id.*, citing *Umbaugh Pole Bldg. Co., Inc. v. Scott*, 58 Ohio St.2d 282, 287 (1979).

{¶ 29} Similarly, a claim for constructive fraud exists only where a fiduciary or confidential relationship has formed between the parties. Constructive fraud often exists where the parties have "a special confidential or fiduciary relation which affords the power and means to one to take undue advantage or exercise undue influence over another."

*Heller v. Bohecker's Business College, Inc.*, 12th Dist. No. CA92-03-046, 1992 WL 276540 at *2 (Oct. 5, 1992), citing *Hanes v. Giambrone*, 14 Ohio App.3d 400, 406 (2nd Dist.1984). "Constructive fraud is the same as actual fraud with the exception that constructive fraud does not require proof of fraudulent intent." *Id.* Summary judgment may be granted to a defendant "upon a claim of fraud where, after construing the evidence most strongly in favor of [appellants], reasonable minds could only conclude that there is no genuine issue as to any of the material elements of fraud and [Chadwick] is entitled to judgment as a matter of law." *Id.*, citing *Goens v. Torco Companies*, 12th Dist. No. CA89-06-092, 1990 WL 4259 (Jan. 22, 1990).

{¶ 30} Here, appellants contend that a fiduciary relationship was created between Chadwick and appellants through an informal relationship where both parties understood that a special trust was created. Specifically, appellants assert that throughout September 2007 to May 21, 2008, Chadwick formed a business relationship with Angela Dalton separate and distinct from his role as broker for PJCS. Chadwick acted on behalf of Angela Dalton and appellants in "dealing with lenders, comparing loan offers, and completing due diligence checklists." Angela Dalton confided in Chadwick and sought his advice regarding the purchase of the Business. Furthermore, Angela Dalton stated that she trusted Chadwick so much, that when her lawyer gave her legal advice regarding the purchase of the Business, Angela Dalton asked Chadwick to advise her on the assignments and improvements for the Business. Moreover, Chadwick also assisted appellants in transferring the lease for the Business and the ATM located within.

{¶ 31} In this case, appellants fail to establish that a fiduciary relationship was created between Chadwick and appellants. As defined above, the term "fiduciary" means that a person has a duty to act primarily for the benefit of another. *See Groob* at ¶ 16. In this case, the purchase agreement between appellants and PJCS clearly indicates that Chadwick

worked primarily for the benefit of PJCS, as PJCS was the party required to pay Chadwick's sales commission. Furthermore, there is no evidence in the record that Chadwick had the mutual understanding that a special trust or confidence existed between himself and Angela Dalton, let alone with appellants. Moreover, as discussed above, the purchase agreement makes clear that Chadwick offered no warranty or representation to appellants regarding the business transaction.

{¶ 32} Appellants placed their trust in Chadwick because he offered them advice and guidance during the sale of the Business. However, this alone does not make a fiduciary relationship. Based upon our review of the record, we find that no genuine issues of material fact remain as to whether a fiduciary relationship existed between Chadwick and appellants. Therefore, Chadwick is entitled to judgment as a matter of law on appellants' claim for breach of fiduciary duty. Inasmuch as no fiduciary relationship existed, and appellants cannot prove their fraud claim, Chadwick is also entitled to judgment as a matter of law as to appellants' constructive fraud claim.

{¶ 33} Accordingly, appellants' first assignment of error is overruled.

{¶ 34} Assignment of Error No. 2:

{¶ 35} THE TRIAL COURT ERRED IN DISMISSING [APPELLANTS'] CLAIMS AGAINST SPICER AND CONSULTAX.

{¶ 36} In their second assignment of error, appellants argue that the trial court erred in granting summary judgment to Spicer and Consultax because their actions in verifying the fraudulent financial records constituted negligent misrepresentation or fraud.[5] Spicer and Consultax failed to file briefs in this appeal.

---

5. Appellants also brought claims of breach of fiduciary duty, negligent performance of professional services, and promissory estoppel against Spicer and Consultax. However, appellants fail to address these claims in their brief. As such, we shall not address these claims in our decision, as no evidence has been presented that these claims were dismissed in error.

## Negligent Misrepresentation

{¶ 37} The elements of negligent misrepresentation provide that "one who, in the course of his business, profession or employment, * * * supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information." *Haddon View Invest. Co. v. Coopers & Lybrand*, 70 Ohio St.2d 154 (1982); *Four-O Corp.*, 2007-Ohio-5628 at ¶ 13-17.

{¶ 38} In cases addressing the allegedly negligent conduct of an accountant, said "accountant may be held liable by a third party for professional negligence when that third party is a member of a limited class whose reliance on the accountant's representation is specifically foreseen." *Haddon View* at 157. "[A]ccountants make reports on which people other than their clients foreseeably rely in the ordinary course of business." *Id*. "This being the case, the accountant's duty to prepare reports using generally accepted accounting principles extends to any third person to whom they understand the reports will be shown for business purposes." *Id*.

{¶ 39} Here, Spicer and, through him, Consultax, verified that the financial records provided by PJCS were accurate. Spicer acknowledged that he knew that "the people that [Jensen] was working with needed a third party's stamp of approval" on the financial records. Thus, Spicer was aware that the financial records would be shown to a third party for business purposes. As such, the trial court erred in granting judgment in favor of Spicer and Consultax as to appellants' negligent misrepresentation claim. Questions of fact remain as to whether Spicer and Consultax exercised reasonable care or competence in verifying the financial records that were ultimately provided to appellants.

## Fraud

{¶ 40} Appellants also assert that the trial court erred in granting summary judgment to Spicer and Consultax on appellants' claim of fraud, as questions of fact remain as to whether Spicer's verifying of the financial records for the Business provided by PJCS was done with an utter disregard for the truth.

{¶ 41} As provided above, the elements of fraud are: (1) a false representation concerning a fact, (2) knowledge of the falsity of the representation or utter disregard for its truthfulness, (3) intent to induce reliance upon the representation, (4) justifiable reliance upon the representation, and (5) injury proximately caused by the reliance. *Crown Property*, 113 Ohio App.3d at 656. The record below makes clear that Spicer verified that the financial records he received from PJCS were accurate when there was evidence that they did not match the records maintained by Spicer and Consultax. There is also evidence in the record that Spicer knew his verification would be relied upon by third parties and that appellants did rely upon the verified financial records in purchasing the Business. Therefore, we find that genuine issues of material fact remain as to whether Spicer and Consultax acted fraudulently in verifying the financial records in this case. As such, the trial court erred in granting summary judgment in favor of Spicer and Consultax as to appellants' fraud claim.

{¶ 42} Accordingly, appellants' second assignment of error is sustained.

{¶ 43} Based upon the foregoing, we find that Chadwick is entitled to judgment as a matter of law on appellants' claims for fraud, constructive fraud, intentional misrepresentation, and breach of fiduciary duty. Spicer and Consultax, however, are not entitled to judgment as a matter of law on appellants' claims of negligent misrepresentation and fraud.[6]

---

6. It should be noted that Spicer, as a non-lawyer, is representing Consultax, Inc. and filed the motion for summary judgment, which led to this appeal, on behalf of himself and Consultax. If Consultax is a corporation, Spicer is not permitted to represent Consultax as a pro se advocate in court. *Union Savings Association v. Home Owner's Aid, Inc.*, 23 Ohio St.2d 60 (1971). Upon remand, the trial court should determine whether Consultax is a corporation and proceed accordingly.

**{¶ 44}** The trial court's judgment is affirmed in part, reversed in part, and the cause is remanded for further proceedings consistent with this opinion.

RINGLAND and HENDRICKSON, JJ., concur.